# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## GOODMAN V. R. & D. RAILROAD CO.

### MARCH 25th, 1886.

1. APPELLATE COURT—*Two trials—Judgment.*—Where at first trial there is a verdict for plaintiff, which is set aside, and plaintiff excepts, and at second trial a jury is waived, and the whole matter of law and fact submitted to the court, and judgment is rendered for the defendant, to which the plaintiff excepts, and the court certifies the evidence, wherein there is no conflict, this court will review the case, and if the evidence sustains the verdict, will enter judgment for plaintiff on that verdict, without considering the subsequent proceedings.

2. NEGLIGENT INJURIES—*Master and servant—Case at bar.*—Case where the evidence shows that the defendant company was guilty of negligence in not providing and keeping a ladder on a freight car next to the caboose car in repair, so as to make it safe for the conductor of the train to pass up and down it in the discharge of his duties ; and where the conductor (plaintiff here), by reason of said defective ladder, whilst in the discharge of his duties, fell—no negligence of his own contributing to cause the fall—by which fall he was severely injured and permanently disabled, and was held to be entitled to damages.

Error to judgment of circuit court of the city of Richmond, rendered December 20th, 1883, in an action of trespass on the case wherein T. A. Goodman is plaintiff and the Richmond and Danville Railroad Company is defendant.

The object of the action was to recover damages for an injury caused to plaintiff by means of a fall which was caused

by reason of a defective ladder on the freight car next to the caboose car of defendant company's train whereon the plaintiff was engaged in the discharge of his duties as conductor at the time of the accident. The jury found for the plaintiff, and assessed his damages at $7,500. The court, on the motion of the company, set aside the verdict, to which the plaintiff excepted. At the second trial a jury being waived and all matters being submitted to the court, there was judgment for the defendant, to which the plaintiff again excepted, and the court certified the evidence. To that judgment the plaintiff obtained a writ of error.

Opinion states the case.

*W. W. & B. T. Crump*, for the plaintiff in error.

*H. H. Marshall*, for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of the city of Richmond, rendered at its December term, 1883, in a suit at law therein depending, in which the appellant, T. A. Goodman, is plaintiff, and the Richmond & Danville R. R. Co. is defendant.

The plaintiff in error, T. A. Goodman, had been a freight train conductor on the road of the defendant for more than a year (with a well-attested and admitted experience and qualifications as such), when, on the 16th of April, 1883, a freight train of loaded cars was put in his charge, about 3:30 P. M., at North Danville by the train-dispatcher at that place. He was engaged from that point to Barksdale's in examining his papers. At Barksdale's—a station on the road, thirteen miles this side of Danville—in coming out of his caboose car, he observed the

*ladder* on the freight car next to the caboose car, and saw that a part of the hand-hold had been broken off and that the upper step of the ladder had been renewed by a new step, of a piece of common plank, but thicker than the original step, and countersunk in the precise place in the uprights which the original step had occupied. That there was enough of the hand-hold remaining to take hold of, and the part broken off seemed to be an old break. That one of the uprights of the ladder had been split between the first and second steps, and had been nailed together. That he did not "*dream*" that the ladder was unsafe, but thought it was perfectly secure and serviceable, and if he had thought it was unsafe, he would not have gone upon it for the whole road of the defendant, for a fall from it was almost certain death. He had no occasion to use the ladder until about 2 o'clock next morning, when, as his train, which had been running all night, was a little distance below "Bon Air," he found it was running too fast. He stepped upon the third round of the ladder upon the freight car from his caboose car, and waived his lantern above the car as a signal to the engineer to slack up. This the engineer did, and the plaintiff stepped back on the caboose car. When the train reached "Belle Isle" it was running about four miles an hour, and was approaching a coaling station in Manchester, where it was due at 2:30 o'clock A. M., and it was on time. At this station it was his duty, as conductor, to go forward to the engine to see that no coal was left upon the track. Accordingly, with his lantern on his arm, he stepped from the iron rail of the caboose car, and, placing his right foot on the third round of the ladder of the freight car, took hold of the top round of the ladder with his hand; then placing his left foot on the second round of the ladder, he raised his body up erect and reached over to take hold of the plank walkway which was along the centre of the top of the freight car. At that moment, the

second step or round of the ladder upon which his weight rested, broke away under him, and as he fell back he caught the hand-hold, which broke off; and, there being nothing to stay his fall, he would have fallen between the cars and been crushed, but that, holding with his right hand to the outer edge of the top of the freight car, and the train happening at the time to be running on a curve, he managed to swing himself clear of the train and down an embankment, and was knocked out of his senses; and so remained unconscious until next morning at 6 o'clock, when he found himself in a caboose car at the depot in Richmond.

The plaintiff proved, by his own admission, that he had read the regulations of the defendant company, and knew that one of them said, "Conductors will not take cars that are in bad order or unsafely loaded"; and another which required him to see to the "running-gear" of the cars in the train at each place where he took on wood or water. He further testified, that he had reported cars which were out of order, but had been required to use them notwithstanding, and that he did not suppose the ladder was unsafe at all, and would not, for. anything in the world, have gone upon the ladder if he had thought it was not perfectly safe.

The evidence shows that the plaintiff was confined to his bed for many weeks, suffering intense pain, from which he had not recovered, and was likely to be permanently injured and disabled; his back, or spinal cord, being severely injured.

The action is trespass on the case for negligence of the defendant company causing the injury, and the damages are laid at $20,000. Upon the plea of "not guilty," and issue joined thereon, the case was tried by a jury; who, after hearing the evidence in the case, and being instructed by the court, rendered a verdict for the plaintiff, and assessed his damages at $7,500, with interest from November 24, 1883, until paid.

Thereupon the defendant moved the court to set aside the verdict of the jury, upon the ground that the said verdict was contrary to the law and the evidence in the cause; and the court being of opinion, upon argument and consideration, that the evidence in the cause did not warrant the jury in finding a verdict for the plaintiff, did set the said verdict aside and ordered a new trial of the cause. To this action of the court the plaintiff excepted, and his bill of exceptions was signed and sealed by the court, and contains only a certificate of the evidence and of the instructions, and not a certificate of facts. Upon the second trial of the cause a jury was waived by both sides, and the whole case of law and fact submitted to the court; and a judgment was rendered by the court, after hearing the evidence in the cause, for the defendant. To which the plaintiff excepted, and a bill of exceptions setting out the evidence was signed and sealed by the court.

There are two assignments of error: 1st. The action of the court below in setting aside the verdict of the jury, and in not entering a judgment for the plaintiff upon the said verdict; and 2d. In giving judgment upon the second trial for the defendant.

The instructions given by the court, as set out in the bill of exceptions, were in the highest degree favorable for the defendant company:

"1st. That the jury must find for the defendant, unless the plaintiff, by the negligence of the company in failing to keep in proper repair and safe condition the ladder on the car, was injured.

"2d. They must find for defendant unless they believe that the plaintiff did not know, and in the reasonable exercise of his power and duty as conductor of the train, could not have informed himself, in time to avoid the accident, of the hazardous condition of the ladder.

"3d. If the jury believe these two matters, they should find for the plaintiff, unless they should further believe that the accident might have been avoided by the exercise, on the part of the plaintiff, of such care and caution as a reasonably prudent man, with his knowledge or opportunities of knowledge of the danger, ought to have exercised under the circumstances for his own protection and safety; and if they shall so believe, they should find for the defendant.

"4th. The jury are further instructed that under the rules and regulations of the defendant company, which were delivered to the plaintiff by his employers, he was authorized to examine into the condition of the car before he left Danville, and to reject the same or require it to be placed in some other position on the train; and if the jury shall believe that, as a reasonably prudent man, he ought to have done so, he must be treated in this case as having assumed the hazards of the use of the car in its position on the train; and they should find for the defendant."

By the first of these instructions the jury are directed to find for the defendant company, unless it was negligent in failing to keep in proper repair and safe condition the ladder on the freight car. The other three instructions submit the question of contributory negligence by the plaintiff, to the jury. Each of the four instructions propound a *question of fact*, over which the jury was supreme, if the evidence in the cause would warrant or justify the verdict. The question now presented for this court to decide is, did the evidence in the cause justify the verdict of the jury, or, conversely, did the court err in setting it aside and awarding a new trial?

A party to a cause in whose favor a verdict has been rendered by a jury, which verdict is set aside by the trial court, has the right to have this action of the court reviewed upon a bill of exceptions which brings up only a certificate of the evidence

in which there is no conflict or question of credibility of the witnesses; and in a proper case, to have judgment entered by this court upon the original verdict, *non obstante* the subsequent trial and judgment against him by the court below.

In *Brown* v. *Rice's Administrator*, 76 Va. (1 Hansbrough) on page 665, this court says: "If it appears from the evidence so certified that the verdict of the jury was warranted by it, the court erred in setting aside the verdict and granting a new trial to the plaintiff, and all the proceedings subsequent thereto were erroneous, and should be set aside; and the appellate court may enter such judgment as should have been rendered by the circuit court." And, on page 666, after stating that it was deemed unnecessary to review the testimony in detail, the judge says that, under the instructions given by the court, without objection by the plaintiff, "I cannot perceive how the verdict of the jury could have been different *upon the evidence certified.*" And, in that case, judgment was rendered upon the first verdict, and all the subsequent proceedings were set aside and annulled.

In the case of *Green* v. *Ashby*, 6 Leigh, 135, there was a bill of exceptions to the refusal of the court to grant a new trial, in which all the evidence adduced for the plaintiff, for whom the verdict was rendered, was set out, the party excepting having offered no evidence, and there being no conflict in the evidence, nor any doubt of the credit of the witnesses, it was held that the bill of exceptions was good and sufficient though it did not state, nor purport to state *the facts* proved at the trial. In that case Carr, J., says: "This case comes before us upon a refusal of the court below to grant a new trial and an exception taken to that refusal, spreading *all the evidence*, not the *facts proved*, upon the record. In *Carrington* v. *Bennett*, this court decided that the only effect of *Bennett* v. *Hardaway*, 6 Munf. 125, was that a party shall not be permitted so to frame

his bill of exceptions as to refer the credit of the witnesses to the appellate court; and that where there was no conflict, and, of consequence, no question could arise as to the credit of witnesses, the appellate court would consider an exception well taken which spread the *whole evidence,* instead of the facts proved, upon the record. In *Ewing* v. *Ewing,* 2 Leigh, 337, this opinion was again considered as correct, and was acted upon. According to these decisions we must receive the exception here as well taken, for the evidence is all on one side, and there cannot be a question of the credit of witnesses."

In the same case Cabell, J., says: "I am clearly of opinion, upon the authority of the cases of *Carrington* v. *Bennett,* 1 Leigh, 240, and *Ewing* v. *Ewing,* that the exception to the opinion of the court overruling the motion for a new trial, was properly taken, there being no conflict in the testimony (which was all on one side, and against the party tendering the exception); and that, in such a case, it is competent to this court, and it is its duty, to deduce from the testimony all such inferences of fact, as the jury might have deduced from it."

In the case of *Muse* v. *Stern, post,* there had been two trials, and a verdict for the plaintiff by the jury in the first trial, which was set aside by the court, and a judgment rendered, upon a new trial, by the court in favor of the defendant. In that case, the bill of exceptions set out the *evidence,* and not the *facts;* and this court reviewed the case upon that bill of exceptions.

The verdict of the jury in the case at bar, is, we think, in strict conformity to the court's instructions, and is fully justified by the law and the evidence.

The record shows that, as to the circumstances attending the accident, but one witness testified, and he was the plaintiff. The defendant company offered no proof in rebuttal, and made no attempt to show that the ladder, which broke under the

weight of the plaintiff, was in good condition, or that any effort had been made to make and keep it so, although it had been proved that a diagram of the broken ladder had been made by the defendant, when a new one was put upon the car in the place of the broken one, and that that diagram was in the possession of the defendant, and the plaintiff had tried in vain to see either it, or to get a sight of the broken ladder, or any account of it, when he went to the shops of the defendant, in Manchester, to enquire about it. The man, an employé of the company, who took the broken ladder from the car, and replaced it by a new one, was applied to, but he could, conveniently, remember nothing as to its condition when he replaced it with a new one, nor where it then was, nor what had become of it. The defendant company and its employees were dumb, in court and out, when called upon to explain or to justify, or refute, the negligence imputed by the testimony of the plaintiff from the breaking of the ladder and its neglected and unsafe condition—a silence which justified the inference of a conscious neglect of duty.

Moncure, P., in *Cahoon's Case,* 20 Gratt. 797, says: "The conduct of a party in omitting to produce that evidence in elucidation of the subject matter in dispute, which is within his power, and which rests peculiarly within his knowledge, frequently affords occasions for strong presumptions against him, since it raises a strong suspicion, that such evidence, if adduced, would operate to his prejudice."

In section 1266, 2 Wharton's Law of Evidence, it is said: "The holding back of evidence may be used as a presumption of fact, against the party who holds back such evidence, in all cases in which it could be produced."

But not only was there testimony positive and direct before the jury to establish the neglect of the defendant as to the unsafe condition of this ladder, but the necessary and unavoid-

able inference arising from the failure of the defendant to show that it had ever examined this ladder and duly performed the duty required of it, by the instruction, of keeping the ladder safe and in proper repair, establishes its negligence and legal responsibility for it, to the injured party. Indeed, the only defence of the defendant company against the charge of negligence in the repair and condition of the ladder, is that it was so grossly and glaringly defective, out of order and unfit and unsafe, that the plaintiff, as conductor of the train, was guilty of contributory negligence in not seeing it.

The defendant company relies upon the condition of the ladder, and yet it offers no proof, oral or documentary. The plaintiff, who is unimpeached as a witness, and who is admitted to be an upright, sober man, and faithful to his employers, testifies that he had not the least idea or suspicion—did not "*dream*"—that the ladder was unsafe, or had any latent defect which made it dangerous. But this point of contributory negligence was expressly submitted to the jury by the instructions; and its finding was that the plaintiff had not been guilty of contributory negligence in using the ladder, whose appearance was not such as to awaken his doubts and make him hesitate, in the discharge of his duty, or refuse to venture upon it. What was the duty of this defendant company to this conductor, the plaintiff? The law requires that employers shall not subject or expose their employees to hazards against which ordinary care on the part of the employers could guard or remove; and the master or employer is bound to observe all the care which prudence and the exigencies of the situation require, in providing the servant with machinery or other instrumentalities adequately safe for the use of the latter, &c. 107 U. S. Rep. (17 Otto), page 459–60; also, 100 U. S. Rep., p. 213. 53 Iowa Rep., p. 595: "The accident having occurred from defective appliances, the defendant must show that, in the selection and

operation of the machinery which caused or contributed to the accident, it used due care, prudence, skill and watchfulness." In the case at bar, the company charged with the duty of furnishing a sufficient and safe ladder, when it broke under ordinary use, offered no particle of proof to show when it had been inspected, or that it was in proper and safe condition.

In 53 Iowa. Rep., on page 597, the court says: "Negligence on the part of the corporation may consist of acts of omission or commission; and it necessarily follows that the continuing duty of supervision and *inspection* rests on the corporation. For it will not do to say, that, having furnished suitable and proper machinery and appliances, the corporation can thereafter remain passive. The duty of inspection is affirmative, and must be continuously fulfilled and positively performed."

In the case of the *R. & D. R. R. Co.* v. *Moore's Adm'r*, 78 Va. (3 Hansbrough), a freight car conductor was killed by reason of a defective ladder; and this court, upon a demurrer to the evidence, upheld a verdict for $9,000.

In the case of *Clark* v. *R. & D. R. R. Co.* 78 Va. (3 Hansbrough), Judge Lacy speaking for this court says, on pages 717-718: "It was the duty of the company to exercise all reasonable care to provide and *maintain* safe, sound, and suitable machinery, roadway structures and instrumentalities; and it must not expose its employees to risks beyond those which are incident to the employment and were in contemplation at the time of the contract of service; *and the employé has a right to presume that the company has discharged these duties.*" (See also, *McKenzie* v. *B. & O. R. R. Co. ante*, p. 71; also 17 Otto, p. 454.)

We are of opinion, upon the whole case, that the jury was fully warranted upon the evidence, to find negligence upon the part of the defendant, and the absence of contributory negligence on the part of the plaintiff; that the verdict of the jury is right upon the law and the facts of the case; and that the cir-

cuit court erred in setting it aside and in granting a new trial. This action of the circuit court must be reversed and annulled, and this court will effectuate the verdict of the jury by entering upon it, as the circuit court ought to have done, a judgment for the plaintiff.

RICHARDSON, J., and HINTON, J., dissented.

JUDGMENT REVERSED.