# THE WINKELMANN & BROWN DRUG COMPANY OF BALTIMORE CITY *vs.* CHARLES R. COLLADAY, JR.

*Negligence—Fall of Dumb-Waiter—Res ipsa loquitur—Contributory Negligence.*

Plaintiff was defendant's employee in a building where the shaft enclosing dumb-waiters was used as a means of communicating orders between the different floors of the building. Plaintiff, while using the shaft for such purpose of communication in the course of his duty, was struck on the head by the fall of the dumb-waiter from the fifth floor while it was empty and not in use. The fall was occasioned by the breaking of the rope holding the dumb-waiter, but there was no evidence to show how or why the rope broke, *Held:*

1st. That the jury were authorized to infer from the fall of the dumb-waiter, unexplained, that the injury was caused by the negligence of the defendant in not providing safe appliances.

2d. That the putting of his head into the shaft by the plaintiff while the dumb-waiter was not in motion, was not contributory negligence *per se* unless the plaintiff knew or should have known that in consequence of a defect in the rope the waiter was liable to fall even when not in use.

Appeal from Baltimore City Court (PHELPS, J.). At the trial the Court granted the plantiff's first and second prayers (the latter related to the measure of damages) and modified the defendant's third, fifth and sixth prayers by adding to the same as offered the clauses enclosed in brackets. No evidence was offered on the part of the defendant.

*Plaintiff's 1st Prayer.*—If the jury find from the evidence that at the time of the accident and injury to the plaintiff for which this suit is brought, the plaintiff was in the employ of the defendant as clerk, on the second floor of its warehouse, and at that time the defendant

used and operated in its business a dumb-waiter, consisting of two boxes suspended by a rope over a pulley in the fifth floor, and operated by being pulled by ropes up and down through a shaft extending from the cellar to the fifth floor, so that, as one box would ascend the other would descend; and if they further find that, at the time of the happening of the injury complained of, the dumb-waiter was not in use, one box being at the fifth floor, and the other in the cellar, and that whilst so standing not in use the box of the dumb-waiter at the upper floor fell, by the breaking of the rope by which it was suspended, and struck the plaintiff on the head whilst he was using the shaft as a means of communicating a message to another employee of the defendant, then the jury are instructed that they have a right to infer, in the absence of any evidence on the part of the defendant showing how the accident happened, that the falling of the dumb-waiter was occasioned by the negligence of the defendant in not providing safe appliances, and if they find such negligence of the defendant, and that the plaintiff was injured thereby, then their verdict must be for the plaintiff, unless they further find from all the circumstances of the case that the plaintiff was guilty of a want of ordinary care and prudence, which directly contributed to the injury.—(*Granted.*)

*Defendant's 1st Prayer*, which was rejected, was to the effect that the plaintiff had offered no evidence legally sufficient to entitle him to recover.

*Defendant's 2nd Prayer*, was that from the undisputed evidence in this case, it is apparent that the plaintiff so directly contributed to the happening of the accident by his own want of ordinary care and prudence, that he cannot recover in this action.—(*Rejected.*)

*Defendant's 3rd Prayer.*—If the jury find from the evidence that at the time of the accident and injury to the plaintiff for which this suit is brought, the plaintiff was in the employ of the defendant as clerk on the second floor of its warehouse, and had knowledge of the working of the dumb-waiters therein, and that at the time of said injury to the plaintiff, the rope of the

dumb-waiters was in a defective condition, and that the said defect of said rope was known by the plaintiff, and that the plaintiff, on November 24, 1894, while communicating a message to another of defendant's employees at the shaft of the dumb-waiters on the first floor of said warehouse had his head in the opening of said shaft, and while in such position, the rope of the dumb-waiters broke, in consequence of said defect therein, causing the dumb-waiter to descend, and in the descent thereof the same came in contact with the plaintiff's head, thereby causing the injury complained of, then the plaintiff was guilty of such contributory negligence as will prevent his recovery in this action, [provided the plaintiff knew, or in the exercise of ordinary prudence should have known, that by reason of said defect in said rope the dumb-waiter was liable to fall even when not in use by its own weight].—*(Granted as modified.)*

*Defendant's 4th Prayer.*—If the jury find from the evidence that at the time of the accident and injury to the plaintiff for which this suit is brought, the plaintiff was in the employ of the defendant as clerk on the second floor of its warehouse, and with Vordenberg had charge of the second and third floors, and had knowledge of the working of the dumb-waiters therein; and that the plaintiff, on November 24th, 1894, while communicating a message to another of defendant's employees at the shaft of the dumb-waiters on the first floor of said warehouse, had his head in the opening of said shaft, and while in such position the rope of the dumb-waiters broke, causing the dumb-waiter to descend, and in the descent thereof the same came in contact with the plaintiff's head, thereby causing the injury complained of, then the plaintiff was guilty of such contributory negligence as will prevent his recovery in this action.—*(Rejected.)*

*Defendant's 5th Prayer.*—If the jury find from the evidence that the rope by which the dumb-waiters in the defendant's warehouse was operated, was defective or out of repair; yet, if they further find that the plaintiff knew of such defect or want of repair, or by the exercise

of reasonable care, might have known it, and continued in the use of the dumb-waiter in the service of the defendant with that knowledge, and that the accident complained of happened while he was communicating a message down the shaft of the dumb-waiters to a co-employee on the first floor below, caused by such defect and want of repair of said rope, then he cannot recover; [provided the plaintiff knew, or in the exercise of ordinary prudence should have known, that by reason of said defect in said ropes the dumb-waiter was liable to fall, even when not in use, by its own weight].—(*Granted as modified.*)

*Defendant's 6th Prayer.*—If the jury find from the evidence that the means of communication used in the defendant's warehouse between the several floors thereof before and at the time of the alleged injury to the plaintiff, was dangerous, [because the dumb-waiter was liable at any time to fall by its own weight, breaking the rope], and the plaintiff knew, or by the exercise of ordinary care might have known, of said danger, and the plaintiff continued in the service of the defendant, and sustained the injury complained of, then the plaintiff is not entitled to recover in this action.—(*Granted as modified.*)

*Defendant's 7th Prayer.*—That if the jury find from the evidence that the plaintiff might, by the exercise of ordinary care and caution, have escaped the injury for which this action is brought, and did not exercise such care and caution at the time when the accident occurred, and that but for the want of such care and caution he would not have sustained the injury complained of, then the plaintiff is not entitled to recover.— (*Granted.*)

The jury returned a verdict for the plaintiff for $2,000.

The cause was argued before McSherry, C. J., Bryan, Briscoe, Page, Roberts and Boyd, JJ.

*S. J. Harman,* for the appellant.
The declaration alleges that, the plaintiff being in the discharge of his duties, and inclining his head toward

the shaft of the dumb-waiter, as he was compelled to do, in order to discharge his duties and to hear the orders given, was violently struck on his head by the falling of said dumb-waiter, which fall was caused by the negligence of the defendant in not providing a proper dumb-waiter, and by its negligence in not properly maintaining the same, and the rope connected therewith; and that said injury was caused by the negligence of the defendant, and without any negligence on the part of the plaintiff contributing thereto. Now the burden was on the plaintiff to prove affirmatively the negative facts alleged, as constituting the defendant's negligence; and the defendant maintains that there was no sufficient evidence produced by the plaintiff showing, or tending to show, the negative facts alleged, as constituting the defendant's negligence; and if this be so, the Court erred in rejecting the defendant's first prayer.

The Court erred in rejecting defendant's second prayer, for it is clear from the undisputed evidence that the plaintiff did not use such care and caution, for his safety, under the circumstances of the case, as he was bound to do; but on the contrary the evidence shows that the injury sustained by him was wholly the result of his own negligence, by using the dumb-waiter shaft *by putting his head therein,* as a means of communication to receive orders when given from the first floor below. *Peak* v. *Buell,* 90 Wisc. 508; *Murphy* v. *Webster,* 151 Mass. 121; *Degnan* v. *Jordan,* 164 Mass. 84; *Rood* v. *Lawrence Man'f. Co.,* 155 Mass. 590; *Ramsdale* v. *Jordan,* 168 Mass. 505.

The plaintiff knew the kind of rope he was using to hoist or lower the waiters as occasion required. He knew its liability to wear and become weakened, especially in the parts where the most strain occurred; and he knew also, when much worn or weakened, of its liability to break. The rope was part of the machinery his duties required him to use while in defendant's employ, and it was incumbent upon him, out of respect for his own safety, to see that the rope he was using was in a safe condition. Though the plaintiff stated in his testi-

mony that he saw no defect in the rope—only a knot which did not weaken it any—yet Vordenberge in his testimony states that one of the strands of the rope had kind of frayed out, and that a few days before the accident, he called the plaintiff's attention to it and warned him not to load the waiter so heavy as he had been doing, that it might go down. There was no necessity that some one should have been specially designated to inspect the ropes of the dumb-waiters, from time to time, after the ropes had been put in. Those persons having charge of the different floors and using the waiters could see whether or not the rope was in proper condition; in fact, that was part of their duty.

Employee's duty to see that machinery he is using is in repair; if out of repair to report to employer; if he does not do so employer not liable. *Bailey's Masters Liability*, p. 169; *T. W. & W. R. Co.* v. *Eddy*, 72 Ill. 138; *Richardson* v. *Cooper*, 88 Ill. 270; *Stroble* v. *R. W. Co.*, 70 Iowa 555; *R. R. Co.* v. *Jewell*, 46 Ill. 99. The servant is under an obligation to provide for his own safety when danger is either known to him or discoverable by the exercise of ordinary care. "He must take ordinary care to learn the dangers which are likely to beset him;" (*Beach on Contrib. Neg.*, Sec. 138), and where the servant is as well acquainted as the master with the dangerous nature of the instrument used he cannot recover. *Beach on Contrib. Neg.*, Sec. 140; *Wheeler* v. *Mason Man. Co.*, 135 Mass. 298; *Wood* v. *Heiges*, 83 Md. 269.

Master's liability for injuries to servant caused by defective machinery does not apply in cases of common and well-knewn tools and appliances. The dumb-waiters in defendant's warehouse are simple in construction, and require no special technical knowledge to operate them. They are not like the modern elevators now in use, heavy and complicated in construction, and which require a certain technical knowledge to operate them. On the contrary the dumb-waiters in the defendant's premises were so simple that they were easily worked by hand power; in fact that was the only power used for operating them. *Marsh* v. *Chickering*, 101 N. Y. 398; *Cahil* v. *Hilton*, 106 N. Y. 512.

It was incumbent on the plaintiff to adduce evidence to prove the facts constituting the defendant's alleged negligence which the plaintiff undertook to do at the trial; and there he adduced all the evidence he could, to show the cause of the accident; and therein failing to prove negligence on the part of the defendant, he succeeded by his prayer in having the Court to rule that, in the absence of any evidence on the part of the defendant to show how the accident happened, that there was a presumption of negligence on the part of the defendant in not providing safe appliances from the fact of the accident alone, and which negligence the jury had a right to infer. It was not incumbent upon the defend-. ant to offer any evidence showing how the accident happened. *Price* v. *Phil. Wilm. & Balto. R. R. Co.*, 84 Md. 506.

No inference of negligence in a case like this, can be drawn from the fact that an accident did happen. *Anna. & Balto. Short Line R. R. Co.* v. *Pumphrey*, 72 Md. 85; *Frech* v. *P. W. & B. R. R. Co.*, 39 Md. 576; *State use of Barnard* v. *P. W. & B. R. R. Co.*, 60 Md. 555; *P. W. & B. R. R. Co.* v. *Stebbing*, 62 Md. 515; *Balto. Elevator Co.* v. *Neal*, 65 Md. 438; *Brady* v. *Consol. Gas Co.*, 85 Md., 637. Negligence cannot be presumed against employer by the mere fact that one of the weights by which the elevator was operated became detached, &c., and fell through the top of an elevator injuring employee. *Davidson* v. *Davidson*, 46 Minn. 117. Fall of elevator by sudden breaking or giving away raises no presumption of negligence. *Robinson* v. *Wright & Co.*, 94 Mich. 283. Where there is evidence from which the cause of the accident can be clearly ascertained, even in cases of the class where such a rule of presumption would be applicable in the absence of evidence of the character above indicated, the presumption ceases, and the question of negligence is to be determined from the evidence. *Farley* v. *Phila. Trac. Co.*, 132 Pa. 61; *Fearn* v. *Ferry Co.*, 143 Pa. 122, 128; *Hayman* v. *P. R. R. Co.*, 118 Pa. 508, 512.

*Edgar H. Gans* and *Vernon Cook* (with whom was *B. H. Haman* on the brief), for the appellee.

However harshly the law may have been laid down against the employee and in favor of the employer, it is everywhere admitted that the employer owes to his employee at least the duty of furnishing safe appliances, and where such appliances are in their nature dangerous or liable to become dangerous, the master is held to the duty of making at least from time to time, a reasonable inspection of the same. This rule is generally recognized. *Chicago & E. I. R. R. Co.* v. *Knierim,* 152 Ill. 458; *Texas & P. R. Y. Co.* v. *Barrett,* 67 Fed. Rep. 214; *Mulvey* v. *Rhode Island Locomotive Works,* 14 R. I. 204; *Tangly* v. *Wilson,* 87 Mich. 453; *Schultz* v. *C. & M. Ry. Co.,* 48 Wis. 375; *McDonald* v. *Michigan Central Ry. Co.,* 65 N. W. Rep. 597; *Bailey on Master's Liability,* 100, 101; *Bailey on Personal Injuries, relating to Master and Servant,* 77, 78 and 79; *Webb on Elevators,* sec. 28; 14 *Am. and Eng. Enc. Law,* 894; *C. & P. R. R. Co.* v. *State,* 44 Md. 294; *B. & O. R. R. Co.* v. *Stricker,* 51 Md. 47; *Wise* v. *Ackerman,* 76 Md. 389.

Now, in this case we have seen from the evidence that the defendant wholly neglected this duty of inspection, and the failure to perform this duty is relied upon as one of the facts showing negligence on the part of the defendant. It is true that one of the witnesses makes some vague statements that it was everybody's duty to inspect the rope, but we have seen three witnesses say there was no one charged with this duty, and their statement is certainly some evidence of this fact to go to the jury. As a result of the failure to perform this duty we have seen that the rope had become frayed, and on a previous occasion the waiter had fallen by the breaking of the lower rope. Then there was no speaking tube furnished the employees on the second floor, which might easily, and at a trifling expense, have avoided the injury. Besides this evidence of negligence on the part of the defendant, it was competent for the jury, in the absence of evidence showing how the fall of the dumbwaiter occurred, to infer negligence on the part of the

defendant in not furnishing safe appliances, from the mere breaking of the rope and fall of the waiter, while not in use. This is the theory of the plaintiff's first prayer. There are some circumstances under which negligence may be inferred. When something occurs, which in the ordinary course of events would not occur without negligence, then the familiar doctrine of *res ipsa loquitur* is applied. This doctrine is particularly applicable to cases in which bodies fall which ought not to fall, and fall in places where they are liable to do injury. *Howser* v. *C. & P. R. R. Co.*, 80 Md. 148. See also 67 Fed. Rep. 569; 89 Mich. 523; 86 Ill. 253; 160 Mass. 573; *Gerlach* v. *Edelmeyer*, 47 N. Y. Sup. C. 292.

The appellant contends, however, that this doctrine of *res ipsa loquitur* does not apply between master and servant. No authority was cited for this contention in the Court below and none can be found. On the contrary, it is said in the Howser case just cited, that in cases where there is a contractual duty between the parties (as here the duty of the master to furnish safe appliances) the application of the rule is generally free from difficulty. Again the doctrine has been applied in cases between master and servant. *Posey* v. *Scoville*, 10 Fed. Rep. 140; *Mulcairns* v. *City of Zanesville*, 67 Wis. 25. In the former of these cases a boiler on a steamboat exploded and injured one of the employees on the vessel. It was held that the doctrine *res ipsa loquitur* applied, and the plaintiff was allowed to recover. In the case of *Mulcairns* v. *City of Zanesville*, a laborer working for the city was employed in shovelling earth at the bottom of a cistern. The cistern wall, which had been built by the city, fell upon the laborer while so engaged. The Court held that the presumption is that the falling of the piece of masonry was the fault of the superintendent who directed the work, and the city was held liable. It seems clear then that this is a proper case to apply this maxim. A dumb-waiter in the ordinary course of events ought not to break and fall, and particularly so, when as here, it was not loaded and not in use.

*As to Contributory Negligence on the part of the Plaintiff.*

—In discussing this question, we must bear in mind: *First.* That the plaintiff was using the shaft of the waiter in what was the usual and customary manner. This as we have seen is according to the testimony of several witnesses, and according to the plaintiff's own testimony, he was using it in a manner made absolutely necessary in order that he might hear the order shouted to him up through the shaft. The draught was so strong that he could not hear unless he inclined his head into the shaft. *Second.* While he knew, as every ordinarily prudent and cautious man knows, that in puting one's head even slightly into such a shaft, it is necessary to see that the waiter is not in motion, he had no reason to suppose that the rope would break, especially at a time when the waiter was not in use. In other words, it was his duty to beware of that danger which was well understood, that is, the danger from the waiter in the ordinary course of its operation and motion, but reasonable prudence did not require him to provide against that other danger which is not ordinarily to be expected, to wit, the breaking of the rope.

The elevator cases, cited by the appellant in the argument below, in which the plaintiffs were held guilty of contributory negligence, were all cases where the party was injured by the elevator in its usual motion, and not by the breaking of the supporting ropes or chains. If ordinary care required one to provide against the possibility of an accident of this kind, then we must never ride in an elevator, and every man who does so is guilty of contributory negligence, and cannot recover in case the elevator falls. This conclusion shows the absurdity of the contention. Numerous cases uphold the contrary doctrine. In *Cummings* v. *Nat'l Furnace Co.*, 60 Wis. 603, it was held not contributory negligence to stand under a bucket containing a heavy load of pieces of iron, which was being lifted by a swinging crane. *Gerlach* v. *Edelmeyer*, 47 N. Y., Superior Court, 292, is almost identical with this case. There the plaintiff was employed to work on a building in course of erection, and had been told that he might walk under the tem-

porary elevator used for hoisting brick and mortar, this being the most convenient way of carrying certain long beams. While so walking under the elevator the same fell and injured the plaintiff. Here it was held that walking under the elevator was not *per se* contributory negligence, and that the fall of the elevator, unexplained, gave rise to the presumption of negligence.

The defendant's third and fifth prayers both assume that if Colladay knew of a defect in the rope, that such knowledge would necessarily charge him with knowledge that there was risk in using the shaft as he did. Knowledge of a defect in an appliance may or may not charge one with knowledge of an attendant risk. If the defect is one which within ordinary experience might cause a certain risk, then knowledge of the defect carries with it knowledge of the risk; but if the defect is slight, or of such a nature that an ordinarily cautious man does not expect risk therefrom, then knowledge of the defect does not carry with it knowledge of the risk. Hence the proviso added to these prayers by the Court, " provided the plaintiff knew, or in the exercise of ordinary prudence should have known, that by reason of said defect in said rope the dumb-waiter was liable to fall even when not in use by its own weight." This is in accordance with the decisions: *Cook* v. *St. Paul Ry. Co.*, 34 Minn. 45; *Dumas* v. *Stone*, 65 Vt. 442; *Wise* v. *Ackerman*, 76 Md. 389.

BRISCOE, J., delivered the opinion of the Court.

The appellant is a corporation conducting the wholesale drug business at No. 31 Sharp Street, Baltimore. The appellee, who was plaintiff below, was employed by the company and was seriously injured by the falling of a dumb-waiter, while engaged in work on the second floor of the company's warehouse. It is alleged by the declaration that the plaintiff was employed by the defendant and had charge of the defendant's patent medicine department, on the second floor of its warehouse; that it was necessary for the plaintiff to receive orders which were given to him by calling in a loud voice from

the first floor through the shaft of a dumb-waiter which
was operated in the warehouse, and that on or about
the 25th day of November, 1894, the plaintiff being in
the discharge of his duties, and inclining his head toward
the shaft of the dumb-waiter, as he was compelled to do,
in order to discharge his duties, and in order to hear
the orders given in the manner aforesaid, was violently
struck upon the head by the falling of the dumb-waiter,
which fall was caused by the negligence of the defend-
ant in not providing a proper dumb-waiter and by its
negligence in not properly maintaining the same, and
the rope connected therewith.   At the conclusion of
the testimony of the plaintiff, the Court was asked by
the defendant to take the case from the jury and its
prayers to this effect having been refused, the case was
submitted upon the plaintiff's evidence.   The plaintiff
offered two prayers, and the defendant eight additional
prayers.   The plaintiff's prayers were granted, and·the
defendant's third, fifth, sixth and seventh were granted,
but its fourth, eighth, ninth and tenth were rejected.

The case was tried before a jury and the judgment
being for the plaintiff, the company has appealed.   The
questions are solely upon exceptions to the rulings of
the Court upon the prayers and they come to this: was
the defendant guilty of negligence, and second was the
plaintiff guilty of such contributory negligence as would
have warranted the Court in withdrawing the case from
the jury.   The evidence shows that the plaintiff was a
young man twenty-four years of age and had been em-
ployed by the defendant company about six years at its
place of business in Baltimore.   At the time of the
accident he had charge of the patent medicine floor,
which was on the second story of a five-story warehouse,
where it was his duty to fill orders for medicines and to
send them down to the first floor by means of an elevator
or dumb-waiter.   This apparatus is described as a shaft
running from the cellar to the fifth story of the ware-
house, within which two boxes made of oak, each weigh-
ing about forty pounds, are used as dumb-waiters for
hoisting to the upper floors, and lowering to the floors,

the goods that are needed from time to time to fill orders. There are speaking tubes between the first and other floors, except the second, and the employees on the first and second floors were compelled to use the shaft as a means of communication in giving orders from one floor to the other. The plaintiff stated: "The way we got orders out, from the second floor, the only way we could communicate from the second floor to the others, we had to incline our head in the shaft of the dumb-waiter." "The reason we had to do that was to get the sound—we could not hear what the orders were, because there was such a draught coming up there; we had no speaking tubes, and it was our place to do it."

And as to the accident, he stated, that all he knew about it was, that on the 24th of November, 1894, between a quarter after five and five thirty, the bell was rung for an order; "I inclined my head on the side of the shaft to get the sound of what was said, to find out what the order was and just when I put my head there the waiter fell from the fifth floor." He further testified that this was the only and usual way to receive orders between the two floors and it was the custom of the other employees to thus receive and give orders through this shaft.

It further appears that the rope which supported the boxes of the dumb-waiter consisted of two hemp ropes, each three-quarters of an inch thick and composed of three strands or twists, and that one of these strands had frayed out. The plaintiff also testified that he did not consider it dangerous to place his head on the side of the box, unless the waiter was in motion and did not believe the waiter could fall of its own weight, when not in use; that it was unloaded and standing still at the fifth floor when the accident happened.

Some of the witnesses testified that it was not necessary for the plaintiff to have inclined his head in the shaft to receive the orders from the first floor, and that he was advised of the condition of the rope prior to the injury, but this was denied by the plaintiff. We have

thus examined the testimony somewhat at length, because it is conceded that the decision of the case rests upon the legal sufficiency of the plaintiff's evidence, under the pleadings in the cause. Now it is apparent that the material facts of the case are conflicting and this being so, the plaintiff had a right to have the whole case passed upon by the jury.

It is well settled that unless there is some prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ, Courts will not withdraw the case from the consideration of the jury. *Central Ry. Co.* v. *Coleman,* 80 Md. 337. The prominent fact in this case is the falling of the dumbwaiter, while unloaded and at rest, from the fifth floor of the warehouse.

There was no attempt to explain or refute the negligence imputed by the plaintiff's testimony, and in the absence of this explanation on the part of the company the law raises the presumption of negligence. The rope was not produced at the trial and the plaintiff testified that he made an effort to see the rope after the accident but it could not be found—that it was in the possession of one of the company's employees. In the recent case of *Howser* v. *C. & P. R. R. Co.,* 80 Md. 146, this Court said: " Whilst the general rule undoubtedly is, that the burden of proof that the injury resulted from negligence on the part of the defendant is upon the plaintiff, yet in some cases the very nature of the action may of itself and through the presumption it carries supply the requisite proof." A similar doctrine was applied in the cases of *Goodman* v. *R. & D. R. R. Co.,* 81 Va. 583; *Posey* v. *Scoville,* 10 Fed. Rep. 140; *Mulcairns* v. *City of Zanesville,* 67 Wis. 25; *Mo. Pac. Ry. Co.* v. *McCally,* 41 Kansas 649; *Texas & P. Ry. Co.* v. *Barrett,* 67 Fed. Rep. 214; *Barnowsky* v. *Helson,* 89 Mich. 523. But apart from the presumption of negligence, there was evidence, if the jury believed it, tending to prove negligence on the part of the appellant company. This was a question for the jury, under all the circumstances of the case, and was properly submitted to them.

Nor does it appear from the evidence that the plaintiff's position at the time of the accident was necessarily a dangerous one. It was the usual one occupied by the employees in performing that duty and was not in itself a place of peril. It is not contributory negligence not to look for danger where there is no reason to expect it. The evidence upon this branch of the case is also conflicting, and a doubt existing as to its character, contributory negligence becomes a question of fact to be determined by the jury. *B. & O. R. R. Co.* v. *State use of Wily*, 72 Md. 36; *Penna. R. R. Co.* v. *Zink*, 126 Pa. St. Rep. 288; *Nelson* v. *Chicago & St. Paul R. R. Co.*, 60 Wis. 321.

The plaintiff's first and second prayers, and the defendant's seventh prayer and its third, fifth and sixth prayers, as modified by the Court, for the reasons we have given in the discussion of the main questions of the case, fairly submitted the law of the case. For the same reason the defendant's prayers were clearly erroneous and were properly rejected by the Court. The judgment being for the plaintiff, it will be affirmed with costs.

*Judgment affirmed with costs.*

(Decided June 29th, 1898.)