# BETHLEHEM STEEL COMPANY

*vs.*

# VARIETY IRON & STEEL COMPANY.

*Unsafe Premises—Independent Contractor's Negligence—*
*Workmen's Compensation Act.*

Where an employee of an iron company, engaged under contract in placing gas mains in an engine house belonging to a steel company, was injured by the fall of a floor beam which had been put in place by another independent contractor, *held* that the evidence that the beam was not properly fastened was sufficient to go to the jury.                              p. 319

One who expressly or impliedly invites others to come upon his premises, whether for business or other purposes, must be reasonably sure that he is not inviting them into danger, and to that end must exercise ordinary care and prudence to render the premises reasonably safe for the visit.            p. 319

Whether the exercise of due care required the injured employee carefully to examine each floor beam of an unfinished building, to see whether it was properly fastened, before going under it for the purpose of attaching an article to the cable of an electric crane, *held* to be, under the circumstances, a question for the jury.                                   p. 320

That the dangerous condition, which caused the injury to one working on defendant's premises, was the result of the negligence of an independent contractor, does not relieve defendant from liability, since one who owes a duty to another cannot avoid liability for failure to perform that duty by committing its performance to an independent contractor.

pp. 321, 322

One who takes over from an independent contractor employed by him the subject-matter of the latter's work, upon its completion, thereupon becomes liable for dangerous conditions therein as if he had himself created the conditions.       p. 322

Where plaintiff was permitted to amend the "caption" and declaration, by interlineation, by adding the words "for the benefit of," so as to make the suit appear as brought by plaintiff for the benefit of two others named, and, the defendant having filed the general issue plea, issue was joined and the jury sworn, *held* that the suit should be treated as having been brought for the benefit of the persons named.          . p. 323

In view of the provisions, in section 58 of the Workmen's Compensation Act, that if compensation is claimed and awarded or paid under this article, any employer may enforce, for the benefit of the insurer or himself, the liability of such third person, and that if damages are recovered in excess of the compensation already paid or awarded, such excess shall be paid to the injured employee, an employer, after paying the employee's claim for compensation, may bring suit for the benefit of the insurer and the employee against the person primarily liable for the injury, the amount of recovery to be the same as if the injured employee had elected to pursue his remedy against such person.                    pp. 323-326

That the suit, being in the name of the employer, for the benefit of the insurer and the employee, may not be in strict compliance with the statute, is immaterial, the act expressly directing the application of the amount recovered.    p. 326

*Decided June 29th, 1921.*

Appeal from the Baltimore City Court (SOPER, C. J.).

Action by the Variety Iron & Steel Company, for the benefit of the Aetna Life Insurance Company and Harry Alles, against the Bethlehem Steel Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Alexander Preston,* with whom were *Preston & Field* on the brief, for the appellant.

*Willis R. Jones* and *Robert C. McKee,* with whom were *Briscoe, Jones & Martin* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought by the Variety Iron & Steel Company for the benefit of the Aetna Life Insurance Company and Harry Alles, against the Bethlehem Steel Company, to recover for injuries sustained by Harry Alles and alleged to have been caused by the negligence of the defendant, and the present appeal is from a judgment in favor of the plaintiff for $10,000.

Prior to April, 1919, the defendant, the Bethlehem Steel Company, hereinafter referred to as the steel company, had contracted with the Bethlehem Steel Bridge Corporation, hereinafter referred to as the bridge company, and a number of other contractors, for the erection of a large building, about one hundred feet wide and nearly four hundred feet long, known as gas engine house No. 2, at Sparrows Point, Maryland. The bridge company had the contract for the placing of the steel floor beams, spoken of in the evidence as I-beams, upon which the concrete flooring above the cellar or basement of the building was to be constructed after the engines, pipes and machinery were installed, and the Variety Iron & Steel Company, hereinafter referred to as the Variety Company, contracted for the installation of the gas main or pipe, which was located under and was to be suspended from the floor or I-beams. These floor beams, which were from eight to ten feet long, weighed from one hundred and fifty to two hundred pounds and were about six or eight inches deep, ran across the building from the side wall of the building to larger beams, about fifteen inches deep, supported by columns between the concrete engine foundations, and one end of the floor beams was supported by being fitted into a pocket

in the concrete wall of the building, while the other end rested on a bracket, about four inches wide, placed on the side of the columns, to which, after all pipes, etc., were installed, it was to be permanently bolted and riveted.

After the bridge company had placed all the floor beams in position, and, according to the evidence produced by the defendant, had bolted all of them to the brackets, the work of that company was temporarily suspended in the winter of 1917-1918, and was not completed until some time after the accident hereinafter referred to.

In the spring of 1919 the steel company notified the Variety Company that it was ready for it to proceed with its work of installing the gas main, and accordingly the Variety Company sent a number of its employees, one of whom was Harry Alles, to perform its contract. The gas main was a large iron pipe, about four and a half feet in diameter, and had been shipped to the defendant's building in sections from thirty to forty feet long, which weighed about three and a half tons. In order to get these sections of the main into the basement of the building, where, as we have said, the main was to be installed, the Variety Company, with the permission of the defendant, moved four of the floor or I-beams located about the center of the building, and by means of an electric crane belonging to the defendant, located in the top of the building about twenty-five feet above the floor beams, lifted the sections into the building and lowered them into the cellar or basement. After the sections of the main had been placed in the basement, the floor beams that had been removed for that purpose were replaced and rebolted by the employees of the Variety Company, and they then proceeded to distribute the sections of the main in each direction. This was also accomplished by the use of the electric crane, to which was attached a cable, with a hook on the lower end of it. A "sling" was placed around the section of the main to be moved, and then carried up between the floor beams and connected with the hook on the cable. The floor beams were from five to ten feet

apart, and after the sling was connected with the hook on the cable, upon a signal from one of the workmen to the man operating the crane, the pipe or section would be lifted by the crane and moved in the direction desired until it came to the next floor beam, when, upon another signal, the crane would be stopped, the pipe lowered, and the sling unhooked and passed under the beam to the other side and again attached to the cable, when, upon another signal, the pipe would be lifted by the crane and moved forward to the next floor beam, and the same operation was repeated each time a floor beam was reached. This method of moving the sections of the main, according to the plaintiff's witnesses, required care on the part of those using it, and one of them testified: "If we get tight up against that I-beam with the heavy strain, we are liable to bend the I-beam, * * * with a heavy load on if it (the cable) strikes the I-beam pretty hard it will damage the building and sheer the cable," or it might "bend the bolts and knock the I-beam down."

On the day of the accident Harry Alles had charge of the sling around the sections of the main, and when the crane would stop, and the sling was unhooked from the cable, he would pass it under the beam to the other side and up to the man standing on the beam to be hooked to the cable again. In doing this he stood on top of the section of the main or pipe in order to reach the man above him, and remained there to keep the kinks out of the sling until it and the cable became taut. They had moved a section of the pipe or main about fifty feet from where the section had been placed in the basement, and had passed six or eight of the floor beams, when, while Alles was still standing on the main, the sling or cable struck the floor beam above him and knocked or pulled it off the bracket, and in falling it struck him on the foot and cut off two of his toes. It is not entirely clear from the plaintiff's evidence whether the cable or sling struck the beam before the crane had stopped, or lifted the beam after the cable had been attached again on the other side, but, ac-

cording to the testimony of Alles, the accident occurred after the sling had been passed under the beam and attached to the cable on the opposite side, and after the signal had been given to the crane man to start. He says it occurred before the section of the main was lifted by the crane from the floor of the cellar.

The plaintiff offered evidence tending to show that the beam that fell had not been bolted to the bracket; that the pressure of the cable on the beam was too light to have displaced it had it been bolted; that the beams which were removed by the employees of the Variety Company had all been bolted and riveted, and that they had every reason to assume that the beam in question was also bolted; that it was too dark in the basement for Alles to notice that the beam was not bolted, and that there were boards and other material on top of the beams that prevented the employees from seeing the end of the beams resting on the brackets.   The defendant, on the other hand, offered evidence tending to show that the floor beams had been placed in position temporarily, and that the work could not be completed until all the pipes and machinery in the cellar had been installed, but that all of the floor beams had been bolted, and would not have been sufficiently secure to enable persons to walk or stand on them unless they had been bolted.   It also appears from the evidence that Alles had been awarded compensation under the Workmen's Compensation Act of this State as an employee of the Variety Company, and that the Aetna Life Insurance Company, as insurer of the Variety Company, paid the compensation, amounting to $420, and $93 for "medical expenses."

At the conclusion of the testimony the plaintiff offered two prayers, which were granted by the court below.   The first prayer was, in effect, an instruction that if the jury found that the Variety Company was invited by the defendant to enter upon the premises for the purpose of installing the gas main, and that Alles was employed by the Variety Company

in the performance of that work, then it was the duty of the defendant to exercise reasonable care for his safety while he was so engaged. The second prayer was in the form of the usual damage prayer in negligence cases, and authorized the jury to allow such damages as would be a fair and just compensation for the injuries sustained by Alles. The defendant offered four prayers, all of which were rejected. All of them sought to withdraw the case from the jury, the first and third on the ground that there was not sufficient evidence of negligence on the part of the defendant, the second on the ground that the work of installing the floor beams was done by the bridge company, an independent contractor, for whose negligence the defendant was not liable, and the fourth on the ground of contributory negligence on the part of Alles. The only exception in the record is to the court's ruling on the prayers.

In view of the evidence to which we have referred it is clear that the case could not have been withdrawn from the jury on the ground that there was no evidence of negligence on the part of the defendant, or on the ground of contributory negligence on the part of Alles. The appellant insists that the only evidence in regard to the floor beams being bolted is the evidence adduced by the defendant to the effect that all of the floor beams had been bolted by the employees of the bridge company, but it overlooks the testimony of Alles, who stated that he was positive that the beam that fell was not bolted or riveted, and the testimony of other witnesses who were present at the time of the accident to the same effect. The weight of this evidence as compared with that of the defendant was, of course, a matter entirely for the jury. In the case of *Kann & Co.* v. *Meyer*, 88 Md. 541, JUDGE BRISCOE, quoting from *Cooley on Torts*, 718, said: "If one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger and to that end he must exercise ordinary care

and prudence to render the premises reasonably safe for the visit. And this rule obtains and is recognized in both the English courts and in the courts of this country."

Nor was there sufficient evidence of the want of care or prudence on the part of Alles to justify the court in saying, as a matter of law, that he was guilty of contributory negligence. He had assisted in moving the floor beams in order to lower the sections of the gas main into the cellar or basement, and, according to his testimony, had found them all bolted and riveted, and the evidence of the defendant is that that is the usual and only safe way to leave them, even when they are placed in position temporarily. The basement was not well lighted, and boards and other material lying on the beams obstructed the view of the brackets when he was standing on or above the floor beams. Whether the exercise of due care required him, under all the circumstances of the case, to carefully examine each beam to see that it was properly bolted before going under it for the purpose of assisting in attaching the sling to the cable hook, was a question that the defendant might, by a proper prayer, have submitted to the jury, but not one to be determined by the court. In the case of *Cook* v. *Balt. Traction Co.,* 80 Md. 551, the Court said: "Where the nature and attributes of the act relied on to show negligence, contributing to the injury, can only be correctly determined by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as a matter of law," and in the case of *Winkelmann & Brown Co: v. Colladay,* 88 Md. 78, it was said to be the well settled rule "that unless there is some prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ, courts will not withdraw the case from the consideration of the jury." This rule has been so frequently stated in this State that further reference to the cases is unnecessary.

The contention more seriously urged by the appellant is that the work of placing the floor or I-beams in position was done by the bridge company, an independent contractor, and that the defendant is not liable for any negligence of the bridge company in the performance of that work. The evidence shows that the work done by the bridge company was commenced in 1917 and was completed as far as was desired by the defendant in the winter of 1917-1918, and was then suspended and accepted by the defendant, who resumed possession of the building until the spring of 1919, when it notified the Variety Company that it was ready for that company to proceed with the work of installing the gas main under its contract. The cases of *DeFord* v. *State,* 30 Md. 179; *City & S. Ry. Co.* v. *Moores,* 80 Md. 348; *Smith* v. *Benick,* 87 Md. 614; *Decola* v. *Cowan,* 102 Md. 551; *Weilbacher* v. *Putts Co.,* 123 Md. 249, quoted and referred to by the appellant, are illustrations of the familiar doctrine relied on. But there are well established exceptions to the rule, and one of them is that a person or corporation on whom the law imposes a positive duty cannot avoid liability for failure to perform that duty by employing a contractor for that purpose. This exception is clearly and forcibly stated by CHIEF JUDGE BOYD in *Bernheimer Bros.* v. *Bager,* 108 Md. 561, where it was said: "It would be carrying the doctrine of independent contractor beyond what the law authorizes to permit an owner of property to thus insecurely erect a dangerous instrument over where his employees were to work, and then escape the result of his negligence by letting the work to be done to a contractor. The appellants were under obligation to use reasonable care in protecting their servants while they were engaged in the work, and could not thus shift the responsibility. The general rule as to independent contractors is thus qualified by the authorities: 'A person or corporation on whom positive duties are imposed by law cannot avoid liability for injuries resulting from failure to perform such duties, by

employing a contractor for the purpose; nor, in such a case, is the fact that the injuries resulted from the contractor's negligence a defense.' 16 *Am. & Eng. Encyc. of Law,* 197. Illustrations of that rule are given and on page 199 of that volume it is said: 'A master's duty to furnish to his employees a safe place to work cannot be delegated to an independent contractor.' This Court has announced similar views in several cases. In *City & S. Ry. Co.* v. *Moores,* 80 Md. 348, after citing *DeFord's Case,* 30 Md. 179, and *O'Donnell's Case,* 53 Md. 110, we referred to *Water Co.* v. *Ware,* 16 Wall. 566, where the question is fully discussed, and added that there were many cases in this country and England to the effect that 'when the employer owes certain duties to third persons or to the public in the execution of a work, he cannot relieve himself from liability *to the extent of that duty,* by committing the work to a contractor.' " As we have said, the work of the bridge company had been completed as far as desired by the defendant in 1917 or 1918, and the building was under the control of the defendant when it notified the Variety Company to proceed with its work, and the facts of the case bring it clearly within the exception stated. In 14 *R. C. L.* 86, sec. 22, it is said: "Generally speaking, as soon as the control of the subject-matter of the contract has been transferred to the employer, as a result either of the completion or stoppage of the work, he incurs the responsibilities which the law attaches to the exercise of the control; and the mere fact that the dangerous conditions which caused the injury were originally created by the negligence or other tortious act of a contractor will not afford him any protection, if he permits them to continue after it is in his power to remove them."

The only remaining question to be considered is the right of the plaintiff to maintain the suit. The appellant says in his brief that the suit was originally brought in the name of the Variety Company, the insurance company and Harry Alles, and the agent of the insurance company testified that

the "suit was started by the Aetna Life Insurance Company and Harry Alles." The docket entries show, however, that the suit was brought on the 6th of February, 1920, and that on motion of the "plaintiff" made in open court on January 18th, 1921, the "plaintiff" was permitted, apparently without any objection, to amend the "caption" and declaration, by interlineation, by adding "for the benefit of" in two places, so as to make the suit appear as brought by the Variety Company for the benefit of the insurance company and Harry Alles, and that on the same day the defendant filed the general issue plea, issue was joined and the jury sworn. Upon this state of the record we must treat the suit as having been brought in the name of the Variety Company, for the benefit of the insurance company and Harry Alles, and the question arises whether it can be maintained under the terms of the Workmen's Compensation Law of this State, Harry Alles having previously claimed and been awarded compensation under that act by the State Industrial Accident Commission. This question was raised in the case of *Hyde* v. *Blumenthal,* 136 Md. 445, where the suit was brought in the name of the employer, "for the use of" the insurance company and the injured employee, but was not decided, because the judgment recovered by the plaintiff was reversed, without a new trial, on other grounds. The precise question was not raised or considered by the Court in *Hagerstown* v. *Schreiner,* 135 Md 650, where the suit was instituted and judgment recovered by the widow and children of the deceased employee, after having been awarded compensation under the act, and where the Court held that their election to accept compensation under the act was a complete bar to any further suit by them.

The statute of Illinois provided in section 3: "No common law or statutory right to recover damages for injury or death sustained by an employee while engaged in the line of his duty as such employee other than the compensation herein provided shall be available to any employee who has accepted

the provisions of this act or to any one wholly or partially dependent upon him or legally responsible for his estate." Sub-section (b) of section 17 of that act contained the following provision: "(b) If the employee or beneficiary has recovered compensation under this act, the employer by whom the compensation was paid or the person who has been called upon to pay the indemnity under sections 4 and 5 of this act, may be entitled to indemnity from the person so liable to pay damages as aforesaid, and shall be subrogated to the rights of the employee to recover damages therefor." In construing that act, the Supreme Court of Illinois said that sections 3 and 17 should be construed together, and that "paragraph (b) provides that, if the employee has recovered compensation, the employer may be entitled to indemnity from the person liable to pay damages and shall be subrogated to the rights of the employee to recover damages. He is not entitled, however, to more than indemnity out of the damages recovered, and the subrogation must be limited to that amount. The amount of recovery, however, is not so limited." *Houlihan* v. *Sulzberger & Sons Co.*, 282 Ill. 76. Section 29 of the New York act required the employee, or his dependents, to elect to take compensation under the act or to pursue his remedy against the negligent person, and further provided: "If he elect to take compensation under this chapter, the cause of action against such other (person guilty of negligence) shall be assigned to the state for the benefit of the state insurance fund, if compensation be payable therefrom, and otherwise to the person or association or corporation liable for the payment of such compensation." Construing this section, the Supreme Court of New York said: "The Workmen's Compensation Law takes no rights from the injured employee which otherwise he would have had against a third party. Instead, it gives him an additional right, namely, the right to compensation under the statute, or he can sue the third party as though the Workmen's Compensation Law did not exist. * * * If he elects to take the

compensation, then he can not later sue the third party whose negligent act injured him. * * * In that event his claim against the third party is assigned to the person paying the compensation by virtue of the provisions of section 29 of the statute. That party may then sue the wrongdoer, and may recover in the same manner as the injured employee could have recovered, had he brought suit against the wrongdoer; and the amount that may be recovered is not limited to the amount paid as compensation. * * * Paying the compensation, the employer may then sue the wrongdoer, and all that is recovered above the amount paid as compensation is for the benefit of the injured employee." *Louis Bossert & Sons* v. *Piel Bros.*, 182 N. Y. Supp. 620. See also *Casualty Co.* v. *Swett Electric L. & P. Co.*, 174 App. Div. 825, 162 N. Y. Supp. 107.

The Illinois act, so far as the present question is concerned is very much like section 57 of the Maryland act (section 58, article 101, Vol. 3 of the Code) prior to its amendment by Chapter 456 of the Acts of 1920. The Illinois act provided that the employer should be "subrogated" to the rights of the employee to recover damages, while the Maryland act provided that "if compensation is claimed and awarded or paid under this article any employer may enforce for the benefit of the insurance company, or association carrying the risk or the State Accident Fund, or himself, as the case may be, the liability of such third person; provided, however, if damages are recovered in excess of the compensation already paid or awarded to be paid under this article, then any such excess shall be paid to the injured employee or, in case of death, to his dependents, less the employer's expenses and costs of action." The *liability* which the employer is thus authorized to enforce is "the liability of such third person," and the only liability of "such third person" referred to in the act is the liability for "damages," which the injured employee could have enforced had he elected to do so. This liability is not limited by the act to the compensation awarded

or paid, but, on the contrary, the act clearly indicates that no such limitation was intended, and following the reasoning and decision of the cases referred to, it seems clear that the Legislature intended the same measure of recovery to apply as would have applied had the injured employee elected to pursue his remedy against the negligent third person.

The fact that the suit is in the name of the employer, for the benefit of the insurance company and the injured employee, Harry Alles, if not in strict compliance with the statute, is immaterial, as the act expressly directs the application of the amount recovered.

Finding no error in the ruling of the court below, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*