GEORGE KLEBE, Appellant, v. PARKER DIS-
TILLING COMPANY.

**Division One, November 27, 1907.**

1. **MASTER AND SERVANT: Safe Appliances: Res Ipsa Loquitur.**
The rule of *res ipsa loquitur*, whereby plaintiff makes out a
prima-facie cause of negligence against his master by show-
ing a break in the machinery with which he was working and
his injury as a result of such break, is allowed where the
machinery is peculiarly within the master's knowledge and
under his control, and he is for that reason in a better posi-
tion to explain the cause of the accident than his injured
servant.

2. ———: ———: ———: **Applies Generally.** And where the
reason for the rule exists it applies to masters and servants
generally, as well as to common carriers and passengers.

3. ———: ———: ———: **Opportunity for Knowing.** But where
the servant or his associates have knowledge or opportunity
to know of the defect in the machinery which caused his injury,
the rule of *res ipsa loquitur* does not apply, but the master's
negligence must be proved, and if not proved plaintiff must
be nonsuited.

4. ———: ———: ———: **Elevator.** Whisky barrels were placed
on an elevator and carried to the fourth floor of defendant's
building and there were removed by plaintiff. On the day
of the accident he had removed seven barrels, and while he
was in the act of removing the eighth the rope broke, the
elevator fell and he was injured. He was twenty-three years
old, had operated this and similar elevators more than four
years prior to his injury, had access to all parts of the build-
ing, and his duties called him to every floor almost daily,
and in connection therewith he used and operated the eleva-
tor from one to six times a day. The rope was of wire, from
three-fourths to an inch thick, had been in use two years,
and was not inclosed, so he had an unobstructed view of it.
He knew defendant's other employees, who had knowledge of
the elevator and its operation; the master had nothing to
do with either. No evidence was offered explaining why
those employed in the building did not explain the cause of
the break. *Held*, that the rule of *res ipsa loquitur* does not
apply, and there being no evidence that the master was in
any wise negligent either in the construction, inspection or
use of the elevator or rope, or that his negligence caused the
accident, plaintiff was properly nonsuited.

5. ————: ————: **Inspection.** Where the engineer who had control of the elevator and cable inspected them once or twice a week and the city inspector inspected and approved it about three weeks prior to the accident, and there was no evidence of the master's negligence, a demurrer to the evidence should have been sustained, as pointing to something other than the master's negligence as the cause of the accident.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*Rassieur, Schnurmacher & Rassieur* for appellant.

(1) Since plaintiff's duties required him to work upon the elevator platform, it was incumbent on defendant to see that the elevator was safely suspended. This involved the furnishing of a rope or cable of sufficient strength, and a continuous duty of inspection on the part of defendant, to see that it remained so. Labatt on Master and Servant, sec. 7; Wendler v. Peoples House Furnishing Co., 165 Mo. 536; Pauck v. Dressed Beef Co., 159 Mo. 467; Settle v. Railroad, 127 Mo. 336; Blanton v. Dold, 109 Mo. 75. (2) Elevator cables of sufficient strength, and under reasonable inspection, when subjected to merely ordinary and usual strain, do not break. Therefore, the proof in this case that the elevator cable parted under an ordinary load. and precipitated plaintiff to the bottom of the elevator shaft, made out a prima-facie case under the doctrine of *res ipsa loquitur*, and shifted the burden of the evidence upon defendant to explain the accident, if it could. Blanton v. Dold, 109 Mo. 74; Turner v. Haar, 114 Mo. 346; Sackewitz v. American Biscuit Mfg. Co., 78 Mo. App. 151; Johnson v. Railroad, 104 Mo. App. 592; Scott v. Dock Co., 3 Hurl. & Colt. 596; Kearney v. Railroad, L. R. 5 Q. B. 411, L. R. 6 Q. B. 759. For the

application of the doctrine to elevator cases, see: Ellis v. Waldron, 19 R. I. 369; Fairbank Canning Co. v. Innes, 24 Ill. App. 33, affirmed, 125 Ill. 410; Gerlach v. Edelmeyer, 88 N. Y. 645; Hartford Deposit Co. v. Sollitt, 172 Ill. 222; Springer v. Ford, 189 Ill. 430; Treadwell v. Whittier, 5 L. R. A. 498. Also see: Labatt on Master and Servant, sec. 834, and cases cited in notes 1 and 8.

*Seddon & Holland* for respondent.

The court did not err in giving a peremptory instruction at the close of the testimony of appellant (plaintiff), because while appellant showed that he was injured by the breaking of a rope, he did not show that the rope broke on account of any defect, much less on account of a defect the existence of which would have been known to respondent by the exercise of ordinary care. The doctrine of *res ipsa loquitur* has no application to a case of this kind between master and servant. Bowen v. Railroad, 95 Mo. 268; Copeland v. Railroad, 175 Mo. 650; Oglesby v. Railroad, 177 Mo. 272; Fuchs v. St. Louis, 167 Mo. 620; Bohn v. Railroad, 106 Mo. 429; Patton v. Railroad, 179 U. S. 658; Railroad v. Barrett, 166 U. S. 617; Shandrew v. Railroad, 142 Fed. 320; Westinghouse v. Hemlich, 127 Fed. 92; Reily v. Campbell, 59 Fed. 990; Ash v. Verlending, 154 Pa. St. 246; Stackpole v. Wray, 74 App. Div. 340; Searles v. Railroad, 101 N. Y. 662; Dobbins v. O'Brien, 119 N. Y. 193; Quincy Mining Co. v. Kitts, 42 Mich. 35; Brownfield v. Railroad, 5 Am. Neg. Rep. 33; Kepner v. Traction Co., 183 Pa. St. 24; Railroad v. Campbell, 97 Ala. 147; Kaye v. Rob Roy Hosiery Co., 51 Hun 519; Starer v. Stern, 100 App. Div. (N. Y.) 383; Reid v. Railroad, 81 Ga. 694; Davidson v. Davidson, 46 Minn. 117; Huff v. Austin, 46 Ohio 386; Bohn v. Railroad, 106 Mo. 429.

WOODSON, J.—This suit was instituted in the circuit court of the city of St. Louis, seeking to recover damages in the sum of $20,000 for personal injuries received by plaintiff, caused by the breaking of an elevator rope or cable, and thereby permitting the elevator, upon which he was working, to drop from the fifth floor of the building to the basement. In the fall he sustained injuries of a very serious nature and they are permanent in their character.

At the close of plaintiff's evidence in chief, the defendant offered a demurrer thereto, which the court gave, to which action of the court the plaintiff duly excepted, and took a nonsuit with leave. Within proper time he filed his motion to set aside the nonsuit and prayed for a new trial, which was, by the court, overruled, and, after properly excepting to the ruling of the court, he appealed the cause to this court.

The facts as disclosed by the record are substantially as follows:

The defendant was engaged in the wholesale liquor business, at No. 213 Market street, in the city of St. Louis, and the plaintiff was one of its employees. The building in which the business was conducted was five stories high. The defendant maintained in its establishment a freight elevator for hoisting and lowering barrels and packages; the elevator was operated by hydraulic power, and the car thereof was suspended from a wire rope or cable provided for that purpose.

The evidence on behalf of plaintiff established that he was twenty-three years of age when he entered the employ of the defendant in April, 1902; that in the beginning his duties consisted of bottling whisky out of barrels. He was assigned to work on the fourth floor of defendant's establishment. Whisky would be sent up from the first floor in a barrel, placed on a freight·elevator; the barrel would be rolled on the elevator there by the foreman, Homberg, or under his

directions.   By means of a starting rope from the first floor, the elevator would proceed to the fourth floor, where it was automatically stopped.   Plaintiff would then enter upon the elevator platform and roll the barrel from the elevator to the floor of the fourth story.

After the first two months plaintiff was put to general work, about the establishment.   The care of the elevator was no part of his duty; an engineer was employed for that purpose.

What occurred on the day of the accident may be best explained in the language of the plaintiff himself and we therefore reproduce here so much of the record as bears directly upon this feature of the case:

"Q.   Now, will you please tell the jury more particularly what happened on the 16th day of September, 1902, in connection with your having been hurt?   A. Well, the foreman rang the bell—it was about half past nine in the morning—he rang the bell for me to take the barrels off of the elevator as he sent them up. . . .

"Q.   That is, they were sent up in single barrels? A.   Yes, sir.

"Q.   And you had taken off about seven barrels as they came up, one at a time?   A.   Yes, sir.

"Q.   And you were at work, taking off what you say was the eighth barrel?   A.   Yes, sir.

"Q.   When the elevator fell?   A.   Yes, sir.

"Q.   What was on the elevator at the time that it fell?   A.   One barrel of whisky.

"Q.   And yourself?   A.   Yes, sir."

Plaintiff stated then that he believed a barrel of whisky weighed about three hundred and forty pounds.

The plaintiff also testified that he had operated a freight elevator about two years and a half prior to the time he entered the employment of defendant and

had also operated defendant's elevator about two years in conjunction with the other employees.

The evidence further showed that the cable was from three quarters of an inch to one inch in diameter and had been in use something over two years prior to the injury; that it was inspected once or twice a week prior to the injury, by the engineer in charge of it, and was by him regularly oiled; that two or three weeks prior to the date of the accident the elevator was also inspected by the city inspector, and a certificate of that fact was posted on the elevator by him. The only witness who testified regarding the break of the cable was Hugh F. Homberg, and his testimony will be best stated in his own language, which is as follows:

"Q.  Now, all you know about this accident yourself is that on the day of the accident, September 16th, the elevator fell?  A.  Yes, sir.

"Q.  And the day after, when you went down to the cellar, you saw the cable was broken?  A.  Yes, sir.

"Q.  That is all you know about it—those two facts?  A.  Those two facts; yes, sir.

"Q.  You don't know, I suppose, under exactly what circumstances the cable broke?  A.  No.

"Q.  You know it was broken?  A.  It was broken, that's all I know.

"Q.  And when you did see this cable broken the day after the accident at the point where it was broken, you saw no evidence of any defect in it, did you?  A. How is that?  I didn't quite understand you.

"MR. HOLLAND:  Did you notice the rope the day after the accident with sufficient accuracy to describe it, or was it a casual glance that you took?  A.  It was a casual glance, that's all I took of the rope.

"Q.  Well, now, can you state whether or not at the time of this accident this cable was well oiled?  A. Yes.

"Q. And what you noticed of the cable the time of the accident and prior thereto did you ever see anything the matter with it? A. No, I didn't see anything the matter with it. The cable broke down in the basement, near the cylinder around which it operated."

I. The plaintiff's contention is that it was the duty of defendant to furnish him a secure place in which to work, and reasonably safe appliances with which to labor, which involved the furnishing of a cable of sufficient strength to handle the elevator, and a continuous duty to inspect same, and to see that it did not become defective or dangerous.

The correctness of that contention has many times been approved by this court, and fully supported by the text-writers upon the subjects of negligence and master and servant. [1 Labatt on Master & Servant, sec. 7; Wendler v. People's House Furnishing Co., 165 Mo. 536.]

It is not only the duty of the master to furnish suitable and reasonably safe means and instrumentalities with which the servant is to perform his labors, but he must also maintain them in such suitable and safe condition, which requires their continuous inspection, the repairment of defective parts, and the replacement of those which are worn out. [1 Labatt on Master & Servant, sec. 7; Pauck v. St. Louis Beef & Provision Co., 159 Mo. 477.]

The correctness of this wise and humane rule of law is not questioned by the learned counsel for defendant; but their insistence is that there is no evidence to be found in this record which tends in the remotest degree to show the defendant did not properly perform all of those duties to plaintiff.

We do not understand counsel for plaintiff to contend that there is any oral testimony from the mouths of the witnesses which tends to substantiate their charge of negligence against the defendant, but they

rely solely upon the facts that the cable parted, the elevator fell and that defendant was injured thereby, to make out a *prima-facie* case for the jury; in other words, they contend that the rule of *res ipsa loquitur* applies to the facts of this case, and that they imply negligence on the part of the defendant and call for an explanation on its part. That there is such a rule and that it is well grounded in the jurisprudence of this State cannot be questioned; but the difficulty the Bench and Bar have met with is the proper application of the rule to the facts of a particular case. Much of this trouble, however, disappears if we will but bear in mind the reason for the rule, because the reason of the law is the soul of the law, and where the reason for the rule exists the rule applies; but where that reason does not exist, then the rule has no application. This would seem to be self-evident.

This rule had its birth and origin in the law of necessity, and it may be broadly stated thusly: Where the means and instrumentalities employed by the master are *peculiarly* within his knowledge and under his *control,* he is, therefore, in a much better position to explain the cause of the accident than the injured party is: then the burden of proof rests upon him to disprove the negligence. [3 Hutchinson on Carriers (3 Ed.), sec. 1414; Stager v. Railroad, 119 Pa. St. 70.]

This broad rule, however, above stated, is limited to that class of cases where it appears that the accident was of that kind which, according to *common experience,* does not usually occur except from some fault of the master himself or of his servants, or from some imperfection in the institution or its appliances. [3 Hutchinson on Carriers (3 Ed.), sec. 1415, and numerous cases cited; Ellis v. Waldron, 19 R. I. 371; Labatt on Master & Servant, sec. 834.]

This rule has been more frequently applied to carriers of passengers than to any other class of persons.

In fact, many of the text-writers and the adjudicated cases hold that the doctrine of *res ipsa loquitur* is restricted in its application to carriers and passengers, and has no place in the law of master and servant.

While there may be stronger reasons for applying the rule to common carriers of passengers than to any other class of persons, yet we are not persuaded or prepared to hold that there are no good reasons for holding the rule does not apply to master and servant in proper cases, nor to hold that such a rule of law does not exist; but, upon the other hand, we think where the reason for the rule exists for its application between master and servant, it applies with equal force and effect as it does to common carriers.

In case of a carrier the means and the instrumentalities employed in transportation are *peculiarly* within the knowledge of the master, himself, or of his servants, and are *exclusively* under his or their control, and he is, therefore, in a much better position to explain the cause of the accident than the passenger, who might find the cause of the injury extremely difficult to prove. [Smith v. Railroad, 32 Minn. 1; 3 Hutch., Carriers (3 Ed.), sec. 1413.]

As a rule the passenger has no opportunity to investigate the means employed in his transportation, and he places himself at the mercy of the latter, and, therefore, "it has accordingly been held by this court that passenger carriers bind themselves to carry safely those whom they take into their coaches as far as human care and foresight can go, that is, the utmost care and diligence of very cautious persons, and, of course, they are responsible for any, even the slightest, neglect." [Lemon v. Chanslor, 68 Mo. l. c. 356.]

And we might add another reason for the stringency of this rule against carriers and in favor of passengers, namely: In the great majority of cases the passenger is a stranger to the carrier and the em-

ployees in charge of the train, and, after sustaining an injury, he has no opportunity to investigate the cause of the accident, nor to ascertain the names and addresses of those who do know the facts which cause the injury, which facts in many cases would render it almost impossible for the passenger to establish the cause of the injury; while, upon the other hand, that knowledge is almost without an exception within the knowledge of the carrier or his servants in charge of the train, and for that reason there is no hardship or injustice imposed upon the carrier by shifting the burden of proof upon him and require him to establish the fact that there was no negligence on his part; and if he fails to do so, then the court is authorized and is in duty bound to submit the question of negligence to the jury.

But between master and servant this rule is not so universal in its application, and the reasons for the application of this extraordinary rule between them, in most cases, do not exist. This is largely on account of the fact that the servant as a rule has as much or more knowledge of the place where and the instrumentalities with which he works than the master does, and has as good or better opportunities of investigating them, and especially is that true where the appliances are under the care, control or operation of the servant. In most instances he not only knows of the defects and imperfections in the appliances furnished him but he also has knowledge of the dangers incident to those conditions; and in almost every instance he is acquainted with the persons who own, operate, manage or control the premises and machinery wherein and by which he is injured, and in most cases those who are interested financially in his well-being either know those facts or can readily ascertain them by making inquiry of those who possess that knowledge. So in most instances where the servant is injured by

the negligence of his master, the evidence thereof is obtainable from the lips of those who have knowledge thereof, and in most cases that is equally true whether the servant be killed or only injured. And under those conditions there is no need for the rule of *res ipsa loquitur* and it does not exist and has no application to such state of facts. In such cases there is no hardship or injustice imposed upon the servant or his representatives by requiring him or them to prove the charge of negligence against the master by the testimony of those who have personal knowledge of the facts.

Based upon the reasons, just stated, a majority of the courts of this country, including the Supreme Court of the United States, make the broad statement, without qualification, that the rule mentioned has no application to master and servant. The following are some of the many cases which so hold: Bowen v. Railroad, 95 Mo. 268; Oglesby v. Railroad, 177 Mo. 272; Fuchs v. St. Louis, 167 Mo. 620; Patton v. Railroad, 179 U. S. 658; Railroad v. Barrett, 166 U. S. 617; Shandrew v. Railroad, 142 Fed. 320; Ash v. Verlenden Bros., 154 Pa. St. 246; Stackpole v. Wray, 74 App. Div. (N. Y.) 340; Searles v. Railroad, 101 N. Y. 662; Dobbins v. Brown, 119 N. Y. 188-193; Quincy Mining Co. v. Kitts, 42 Mich. 34; Brownfield v. Railroad, 5 Am. Neg. Rep. 331; Kepner v. Railroad, 183 Pa. St. 24; Railroad v. Campbell, 97 Ala. 147; Starer v. Stern, 100 App. Div. (N. Y.) 393; Reid v. Railroad, 81 Ga. 694; Davidson v. Davidson, 46 Minn. 117; Bohn v. Railroad, 106 Mo. 429; Huff v. Austin, 46 Ohio St. 386.

While the Missouri cases above cited broadly state that the rule has no application to master and servant, yet it was not necessary for a proper determination of those cases to state the rule so broadly. In those cases this court held, and properly so, that the rule did

not apply to the facts of those particular cases; but it did intend to hold that it was a universal rule, without limitations or exceptions; but upon the contrary we have several times held that there were cases where the rule did apply, and the same ruling has been made by many other courts of respectability. [Blanton v. Dold, 109 Mo. 74; Turner v. Haar, 114 Mo. 335, 347; Sackewitz v. Am. Biscuit Mfg. Co., 78 Mo. App. 151; Johnson v. Railroad, 104 Mo. App. 588-592; Scott v. London Docks Co., 3 Hurl. & Colt. 596; Kearney v. Railroad, 5 L. R. Q. B. 411, 6 L. R. Q. B. 759; Ellis v. Waldron, 19 R. I. 369; Fairbank Canning Co. v. Innes, 24 Ill. App. 33, affirmed in 125 Ill. 410; Gerlach v. Edelmeyer, 88 N. Y. 645; Hartford Deposit Co. v. Sollitt, 172 Ill. 222; Springer v. Ford, 189 Ill. 430; Treadwell v. Whittier, 5 L. R. A. 498; Labatt on Master & Servant, sec. 834, and cases cited; Stearns v. Ontario Spinning Co., 184 Pa. St. 519; Grant v. Railroad, 108 N. C. 462.]

Having shown that the rule is in force in certain cases between master and servant, it now becomes our duty to determine whether or not the facts of this case bring it within its operation.

Conceding, as plaintiff contends, that this case falls within that class of cases which according to common experience does not usually occur except from some negligence of the master himself or that of his servants, can it be truthfully said, according to the rule, that the premises in question, the elevator and the instrumentalities employed by the defendant in the conduct of its business, were *peculiarly* within his knowledge and under his control? And, on that account, can it be said, in the light of the facts of this case, that it was in a *much better* position to explain the *cause* of the accident than the injured party was?

We think not. The evidence shows that the plaintiff was a man twenty-three years of age, and had op-

erated this and similar elevators for more than four years prior to the date of his injury; that he had access to all parts of the building, and his duties called him to every floor thereof, almost daily, and that he used and operated the elevator in connection therewith from one to six times a day.

The elevator consisted of a platform, two upright posts and an overhead beam, to which the cable was attached. It had no cage or casing to obstruct his view of the cable, or that of the other employees of the defendant. Its operation was simple. One end of the cable was attached to the overhead beam of the elevator and the other to a revolving cylinder, located in the basement, the revolving of which caused the elevator to ascend and descend. He also knew some, if not all, of the employees of the defendant who had perfect knowledge of the elevator and its operation, and they also, in conjunction with plaintiff, actually operated it; and the master had nothing whatever to do with the elevator or its operation, so far as disclosed by this record, except by and through its servants and employees, one of whom was the plaintiff, who had as much knowledge of its operation and movements as any of them.

If the elevator or the cable was defective or out of repair, there was nothing to prevent plaintiff and his co-employees from seeing them; nor does this record show that there was any reason why those persons employed in and about the building could not or did not examine the break after it occurred, or that their names and places of abode were unknown to him, which prevented him from procuring them to testify in the case. In the absence of any showing, it is reasonable to suppose he could have ascertained from his colaborers all the facts and circumstances connected with the accident, and doubtless could have placed them upon the witness stand and proved by them the exact cause of

the accident, which is always more satisfactory and just to all parties than a mere presumption.

It is thus seen that all of the facts of the case were susceptible of direct proof by persons who possessed personal knowledge of the entire situation, and the cause of the accident and injury.

Measured by this state of facts, the plaintiff has fallen far short of showing that the cause of the injury was *peculiarly* within the knowledge of the master, or that he was in the *exclusive charge or control* of the elevator at the time of the injury.

Such a state of facts as disclosed by this record never gave rise for the *necessity* of the application of the rule of *res ipsa loquitur*. Where the reason and the necessity for the application of the rule are lacking, it should never be resorted to or applied.

All the authorities where the question has been presented, so far as we have been able to find, which hold that the rule applies to master and servant, invariably limit its application to that class of cases which is not susceptible of direct and positive proof by living witnesses, and that doctrine is resorted to as a last resort in order to prevent a miscarriage of justice.

It cannot be said that this rule is a favorite of the courts. A majority of them look upon it with disfavor and limit its application to carriers and passengers, and under no circumstances extend its operations to master and servant, and even those courts which look upon the rule with more favor limit its operation to the necessities of each particular case as it may arise. The following cases indicate the circumstances under which the doctrine has been applied in employers' liability cases: Wight Fire Roofing Co. v. Poczekai, 130 Ill. 139; McCray v. Railroad, 89 Tex. 168; Joint v. Webster, Rap. Jud. Quebec, 15 C. S. 220; The Joseph B. Thomas, 81 Fed. 578; Guldseth v. Car-

lin, 19 App. Div. (N. Y.) 588, 46 N. Y. Supp. 357;
Smith v. Baker, A. C. (1891) 325, 60 L. J. Q. B. (N. S.)
683, 65 L. T. R. (N. S.) 467; Armour v. Golkowska,
95 Ill. App. 492; Drug Co. v. Colladay, 88 Md. 78;
Carroll v. Railroad, 99 Wis. 399; Tennessee Co. v.
Hayes, 97 Ala. 201; Jones v. Railroad, 18 App. Div.
(N. Y.) 267, 46 N. Y. Supp. 321; Van Sickel v. Ilsley,
75 Hun 537; Mulcairns v. Janesville, 67 Wis. 24;
Green v. Banta, 16 Jones & S. 156, affirmed 97 N. Y.
627; Stewart v. Ferguson, 164 N. Y. 553; Westland v.
Gold Coin Mines Co., 41 C. C. A. 193, 101 Fed. 59;
Goodman v. Railroad, 81 Va. 576; Coleman v. Mechanics' Iron Fdy. Co., 168 Mass. 254; Folk v. Schaeffer, 186 Pa. St. 253; Railroad v. Johnson, 23 Tex. Civ.
App. 160; The Lizzie Frank, 31 Fed. 477.

We are of the opinion that the trial court properly
sustained the demurrer to plaintiff's evidence, for the
reasons herein stated.

II. We are also of the opinion that the trial court
properly sustained the demurrer to the evidence, because this record discloses the fact that the engineer
who had control of the elevator and cable inspected
them once or twice a week prior to the date of the
accident, and that about three weeks before that it
was inspected by the city inspector, and that he posted
upon the elevator a certificate of his inspection.

Instead of the evidence tending to establish negligence on the part of the defendant, we are clearly of
the opinion that it pointed in the opposite direction,
and at least tended to show due care on its part. [Buckland v. Railroad, 181 Mass. 3.]

For the reasons above stated, the judgment is affirmed.

All concur.