# GEORGE SABOL v. ST. LOUIS COOPERAGE COMPANY, Appellant.

### Division One, April 9, 1926.

1. **NEGLIGENCE: Master and Servant: Burden.** The injured servant, to recover damages for personal injuries, has the burden of proving by the preponderance of evidence that the master was negligent. He must show affirmatively all the elements of a right to recover.

2. ————: ————: **Presumption.** It is to be presumed, in the absence of evidence to the contrary, that any duty which the law imposes upon the master has been properly performed, and the servant must, in order to make out a prima-facie case which will entitle him to go to the jury, in his action to recover damages for personal injuries, produce some evidence which tends to destroy the force of the presumption. The mere fact of the servant having been injured is not of itself sufficient to overcome the presumption.

3. ————: ————: **Failure of Proof: Falling Pile of Staves.** Where the evidence does not tend to prove that the pile of staves which fell and injured plaintiff, while he was removing bundles from another pile nearby, was constructed or maintained in a negligent manner, but on the contrary was constructed in the usual and customary manner at the usual height of twenty-two feet, two days before it fell, by laying bundles, thirty-three inches long and twelve inches thick, bound with wires, in rows, first in one direction and then in the other; that the ground on which it was piled was level; that the pile was not leaning in any way; that nothing touched it; that no wire was heard to break or pop, and that the first thing that looked unusual or dangerous was when he turned and saw it "caving," he fails to prove any actionable negligence on the part of the cooperage company for which he had been working for eighteen years as a stave-culler, or that such actionable negligence was the proximate cause of his injury, but a verdict for him is based on speculation and conjecture, and therefore there is no legal basis for a submission of his case to the jury.

4. ————: ————: **Application of Rule of Res Ipsa Loquitur.** The rule of *res ipsa loquitur* is bottomed upon the condition that the defective instrumentalities used are peculiarly within the knowledge and under the control of the master, and upon the further reason that the person injured has no opportunity to investigate the cause of the accident or to ascertain the names and addresses of

those who do know the facts which caused the injury, thereby rendering it well nigh impossible for the injured party to establish the cause; it has no application, where the only defective construction of the pile of staves that fell upon plaintiff that can be surmised from the evidence is that it was built to a height of twenty-two feet, and he testifies that such was not an unusual height; that he had been employed for eighteen years in the yards where staves in large quantities were piled, and had assisted in the construction of piles similar to the one that fell; that only thirty feet away at the time it fell were fellow-employees engaged in constructing other piles, and none of them was called to testify that the height was dangerous or to give evidence as to the cause of the falling of the pile, or any reason given why they were not called.

5. ————: **Waiver of Demurrer to Evidence: Subsequent Request for Instructions.** Defendant does not waive his peremptory instruction in the nature of a demurrer to the evidence by asking and receiving further instructions telling the jury that if the evidence does not sustain the single charge of the petition their verdict must be for defendant. Plaintiff's petition contained but one charge of negligence, namely, the erection and maintenance of a pile of staves when defendant knew, or by the exercise of ordinary care could have known, that said pile was unsafe and that there was probable cause that it would fall, and that it did fall and injured plaintiff. At the close of his case defendant asked the court to give to the jury a peremptory instruction in the nature of a demurrer to the evidence. This being refused, defendant offered no evidence, but stood upon the demurrer. Plaintiff requested no instructions whatever; defendant requested and the court gave an instruction to the jury to the effect that if they found that defendant had exercised ordinary care in the erection and maintenance of the pile of staves plaintiff could not recover, and another defining ordinary care. The jury returned a verdict for plaintiff, and defendant appeals. *Held*, that appellant did not waive its demurrer to the evidence by asking for the instructions given. [Distinguishing Davidson v. Hines, 246 S. W. 295.]

———•———

Master and Servant, 39 C. J., Section 1196, p. 971, n. 73; Section 1201, p. 976, n. 8; p. 980, n. 16; Section 1209, p. 989, n. 29; Section 1266, p. 1051, n. 18; Section 1270, p. 1061, n. 40. Trial, 38 Cyc., p. 1550, n. 48.

Appeal from St. Louis City Circuit Court.—*Hon. Anthony F. Ittner,* Judge.

REVERSED.

*Watts & Gentry* for appellant.

(1)   The court erred in permitting respondent to state to the jury his conclusion as to what generally will or will not cause a pile of staves to fall, the question's not having contained any of the facts shown in this case, and the respondent not having shown himself qualified to express his opinion. Southern Iron & Equipment Co. v. Smith, 257 Mo. 226; Mahany v. Rys. Co., 228 S. W. 826. (2)   The court erred in overruling appellant's demurrer to the evidence at the close of plaintiff's case: (a)   Because plaintiff's petition wholly failed to state a cause of action. Zasemowich v. American Mfg. Co., 213 S. W. 799.   (b)   Because the respondent wholly failed to show any negligence whatever on the part of appellant, or that if appellant was negligent, such negligence was the proximate cause of respondent's alleged injury.   Bowman v. A. C. & F. Co., 226 Mo. 53; Sutherland v. Lumber Co., 149 Mo. App. 338; David v. Cider Co., 186 Mo. App. 13; Pruett v. Lumber Co., 188 Mo. App. 347.   (c)   Because the men who piled the staves which fell and injured respondent were his fellow-servants.   Ryan v. Christian Board of Publication, 199 S. W. 1030; Van Bibber v. Swift & Co., 286 Mo. 317; Prapuolenis v. Goebel Const. Co., 279 Mo. 358; Henson v. Stave Co., 151 Mo. App. 234.   Therefore the burden of proving that his injury was not the result of such servants' negligence rested on respondent.   McGowan v. Railroad, 61 Mo. 528; Blessing v. Ry. Co., 77 Mo. 410.   The proof wholly fails to show that the pile was caused to fall by the negligence of anyone unless it was that of respondent's fellow-servants.   (d)   Because the verdict of the jury is based upon speculation and conjecture wholly.   Even granting for the purposes of argument only that the record disclosed negligence on behalf of appellant, it further shows that respondent's alleged injury is as likely to have resulted from a cause for which appellant is not responsible as one for which it is responsible.   Under these conditions there can be no re-

covery. Marlowe v. Kilgen, 252 S. W. 424; O'Dell v. National Lead Co., 253 S. W. 397; Weber v. Valier & Spies Milling Co., 242 S. W. 985; Kidd v. Coahuila Lead & Zinc Co., 204 S. W. 284; Bennett v. Equipment Co., 214 S. W. 244; Bowman v. A. C. & F. Co., 226 Mo. 53.

*John New, Jr.,* and *Earl M. Pirkey,* for respondent.

(1) The fall of a structure without any apparent cause is prima-facie evidence of negligence on the part of the person who provided it. American Shipbuilding Co. v. Lorenski-Lewandowski, 204 Fed. 39; Scheurer v. Rubber Co., 227 Mo. 366; Blanton v. Dold, 109 Mo. 74; Prapuolenis v. Goebel Const. Co., 279 Mo. 367. (2) The duty of furnishing a reasonably safe place and reasonably safe appliances is a non-delegable duty. Prapuolenis v. Goebel Const. Co., 279 Mo. 369; Lampe v. American Ry. Express Co., 266 S. W. 1009; Adair v. Terminal Ry. Co., 282 Mo. 133; Sneed v. Shapleigh Hardware Co., 242 S. W. 699; Coontz v. Mo. Pac. Ry. Co., 121 Mo. 659; White v. Montgomery Ward & Co., 191 Mo. App. 268. (3) The duty to warn is a non-delegable duty. Mertz v. Rope Co., 174 Mo. App. 108. (4) By giving an instruction submitting to the jury the question of whether defendant exercised ordinary care in the erection and maintenance of the pile of staves, defendant clearly implied that there was evidence on that subject and invited a verdict based on such issues. Davison v. Hines, 246 S. W. 303.

SEDDON, C.—Action to recover damages for alleged personal injuries suffered by respondent on June 6, 1921, while in appellant's employment. Plaintiff is a Jugo-Slovack by nativity and had been employed by defendant for eighteen or nineteen years before his alleged injury. The principal allegations of the petition are: "That at the time plaintiff was injured as aforesaid and for some time next prior thereto the place where plaintiff was working was not reasonably safe for said work plaintiff

was as aforesaid engaged in by reason of said pile of
material being insecure so that there was probable dan-
ger of it falling on and injuring plaintiff, and defendant
knew or by the exercise of ordinary care would have
known that said pile was as aforesaid insecure and there
was probable danger of it falling on and injuring plaintiff
before plaintiff was injured as hereinafter mentioned, and
for a long space of time next prior thereto and in time to
have by the exercise of ordinary care remedied said con-
dition before plaintiff was injured as hereinafter men-
tioned, but it negligently failed to do so, and after de-
fendant knew or by the exercise of ordinary care would
have known that said pile was as aforesaid insecure and
there was probable danger of its falling on and injuring
plaintiff defendant negligently required plaintiff to
work and be at and about said pile, all without protection
or notice of any kind to him.  That on or about June 6,
1921, by reason of the negligence of defendant above
mentioned, while plaintiff was engaged in the discharge
of the duties of his said employment under defendant in
culling barrel staves, and was at or near said pile, said
pile, because as aforesaid it was insecure and there was
probably danger of it falling, fell on plaintiff, whereby
he was caused to fall and to strike and be struck by ob-
jects.''  The answer is a general denial.  The facts, as
shown by the evidence, are quite fairly set out in appel-
lant's statement, which (except a few slight modifica-
tions by us made) is as follows:

"The facts disclose that respondent, aged fifty years,
was employed by appellant in the work of culling staves;
that is to say, his duty was to take the bundles of staves
down from where they had been piled when unloaded
from the car in which they were delivered to appellant's
yard, loose the two wires around the bundles, inspect the
staves and throw out the ones which were not suitable for
appellant's use.  Those discarded were known as culls,
and the respondent was what is known among the trade
as a stave-culler.

"Each bundle of staves contained twenty-one or twenty-two separate pieces, each thirty-three inches long and bound together by two wires, making a bundle about twelve inches in diameter. As the staves were unloaded from the railroad cars the bundles were stacked in a pile made by placing on the ground a row of bundles, on top of which another row of bundles was placed at right angles to the bottom row, the third row of bundles was placed on top of and at right angles to the second row, the fourth row the same as the second, and so on. Respondent guesses that the pile which fell on him was about twenty-two feet high. He took no part in the stacking of that particular pile, but he saw other men working under his foreman do that work two or three days prior to respondent's injury. At the time of his alleged injury the pile from which he was taking bundles of staves was about as high as he could reach when standing. However, the pile which injured him was not the pile from which he was removing the bundles of staves, but was a pile standing immediately north of the one from which he was removing the bundles of staves. He says that the two piles of staves were not touching each other, but that there was a little space between them. Neither he nor anyone else, so far as he knows, had touched or pushed anything against the pile which fell on him. Immediately before it fell there was no noise or shock of any kind, nor was there any wind blowing against the pile. The first he knew of any danger was when he turned to take his bundle from the pile next to him and saw this other pile caving. He then dropped his bundle and ran, but before he could get far enough away a portion of the north pile fell and knocked him to the ground.

"At the time of his injury he was earning 42 cents an hour, but in view of the fact that he did not work steadily, his average weekly earnings were about $21 or $22.

"Respondent does not know how much of the pile of staves fell upon him. As above stated, the first intimation he had of any danger was when he suddenly saw the

pile caving. He immediately started to run, was caught by the staves and knows nothing more about what portion of the pile fell. Prior to the time he discovered that the staves were caving, he had seen nothing unusual about the pile of staves which fell on him. Respondent testified that during the eighteen years he had worked as a stave-culler he had helped to pile staves 'once in a while.'

"Over the objection of appellant, in answer to a question by his counsel as to whether or not he knew what would make a pile of staves fall, respondent stated that if the pile was straight and solid it would not fall; or if something was put on the side like a piece of rock or a piece of wood, the pile would not fall right away, but some days afterwards it would fall.

"Respondent testified that sometimes the wires holding the different bundles would break, permitting the staves to become loose; that when a wire would break on a bundle up near the top of the pile, thereby permitting the staves to become loose, the staves would separate and some would fall off the pile; but if the break occurred on a bundle near the middle of the pile it would make the pile a little crooked, make it lean, and it would afterwards fall down; that where the wire breaks inside and one can't see it from the outside, the pile changes its shape, and afterwards falls. He further testified that if there are several bundles piled on top of each other and the wire breaks on one of them on the outside of the pile, and the staves scatter out, that will tip the pile to the outside and all above the break will fall; that he did not know just how much of the taller pile fell off, but that the top part fell. However, he stated that the whole pile of staves did not fall and no portion of it below the level of the top of the one on which he was working fell.

"Respondent testified that in case a wire broke as described above, causing the pile to lean (to use his own language), 'sometimes it would take it slow; take it, maybe, whole half a day, and nobody can tell when they bust, from the front;' that there were two wires on each bundle

and that if but one wire broke the pile would first lean before it came down; that this pile was not leaning any; that he heard no wire break; that the ground upon which the pile was resting was level and solid; that the men who built the pile which respondent claims fell and injured him had been doing the same kind of work for a long period of time, several years.

"Immediately subsequent to respondent's injury he was placed in an ambulance and taken to Alexis Brothers Hospital, where he remained from June 6, 1921, to June 18, 1921, at which time he went home, and has been unable to work since. In the summer of 1922 he tried to work, but the pain in his back was so severe that he was unable to stand it. He testified that he was hurt all over, the greater injury being to his back, legs and knees; that the staves fell on top of him and knocked him down, bruising and skinning his knees, arm and head; that at the time of trial his condition was about the same as it had been since the injury; that he suffered pain in his back and legs; that prior to the injury he had none of those pains and was always healthy.

"Respondent could not remember how long he was confined to his bed, but stated that it was over a year before he could walk a little bit, after which time he walked with a cane, but had been walking without a cane for nearly a year before the trial in February, 1923. Dr. A. G. Youngman, in charge of plaintiff's case, testified that he last saw him some two or three weeks prior to the trial; that he did not have any X-ray pictures made to determine whether or not any fracture had occurred, but, so far as he could determine, there had been sprains to the joints of his body from the backbone down, including the spine, hips, pelvis and knees; that at the time of the trial he walked with difficulty, was hardly able to bend over, had pain in his back and joints on pressure and on movement; that he has not been able to work and that the condition is permanent. Dr. Youngman also testified that he treated respondent once in 1918, at which time he

was an able-bodied man.  He further testified that his condition at the time of the trial was slightly better than it was in July, 1921; that so far as he could tell there were no actual dislocations of the joints, but that they were swollen and tender; that the only treatment he gave him was to rub him with ordinary liniments, as a result of which the swelling had disappeared to some extent, but the joints had not become much more supple than they were.

"Dr. D. C. Todd examined plaintiff on November 6, 1922, and again on February 13, 1923, the day before the trial was had.  The examination disclosed that the lower part of the back showed a great deal of pain and tenderness over the sacroiliac joint, which is that area around the wedge-shaped bone of the spinal column and extending down; that the staggering gait or walk, which plaintiff has, would be caused by a weakness at this point, which in turn produced the weakness of the extremities below.  However, on the second examination, the day before the trial, Dr. Todd found a change for the better in plaintiff's condition.  The right sacroiliac joint was not in so bad condition as the left, which seemingly had gotten worse.  The right side had improved he thought, and the left side had either gotten worse, or the improvement of the right side made it seem worse.  Plaintiff is not able to do a day's work and in witness's opinion, will not be able to do another day's work.  He, too, thought respondent's condition was permanent.

"At the close of plaintiff's case, defendant requested the court to give to the jury a peremptory instruction in the nature of a demurrer to the evidence.  This the court refused to do, and defendant offered no evidence but stood upon the demurrer.

"Respondent (plaintiff) requested no instruction to the jury whatever.  On its own motion, the court gave to the jury an instruction telling them that a verdict by nine or more jurors might be reached.  On behalf of appellant (defendant), the court instructed the jury that if

they found that appellant had exercised ordinary care in the erection and maintenance of the pile of staves, which fell and injured respondent, he could not recover, and another instruction defining ordinary care."

The jury returned a unanimous verdict in favor of plaintiff for $15,000, upon which judgment was duly entered. After unsuccessfully seeking a new trial, defendant has appealed to this court.

I.   The appellant assigns error in the overruling of its demurrer to the evidence.   While other errors are assigned, yet if this assignment alone is well taken, our ruling sustaining the assignment necessarily disposes of **Insufficient** the case and it becomes unnecessary to notice **Evidence.** the other assignments.   We will, therefore, first address ourselves to a consideration of this foremost assignment of error.

Appellant's contention on this point is two-fold. First, it is contended that the petition itself does not state a cause of action; and, secondly, that the evidence wholly fails to show any negligence whatever on the part of appellant, or that, if appellant were negligent, such negligence was the proximate cause of respondent's alleged injury.

This being an action involving the relationship of master and servant and the correlative duties of each to the other, it may be well, in order that we may get our proper bearings, to state some of the general rules or principles of law applicable to that relationship and bearing upon actions for damages resulting from personal injuries suffered by the servant when engaged in the master's service.   A few of these rules are clearly and concisely stated, amply supported by authorities, in Labatt in his well-recognized and standard treatise on Master and Servant (2 Ed.) volume 4, pages 4851 et seq., as follows:   "An injured servant, like all other persons who seek to recover damages on the ground of negligence, has the burden of proving by a preponderance of evidence

that the defendant was culpable in the premises.  This
doctrine may be regarded simply as an illustration of the
general rule of procedure which is embodied in the max-
im (substituting the mother tongue for the ancient Lat-
in), 'The *onus* of proof is on the plaintiff. It is incumbent
on him to show affirmatively all the elements of a right
to recover.' Or it may be referred to the more particular
conception—applicable only to actions for negligence—
that, as it is presumed, in the absence of evidence to the
contrary, that any duty which the law imposes has been
properly performed, a servant must, in order to make out
a prima-facie case which will entitle him to go to the
jury, produce some evidence which tends to destroy the
force of the presumption in the given instance.  Some-
times both these notions are adverted to in the same state-
ment." [Sec. 1599.]  "A doctrine which has very frequ-
ently been affirmed in employers' liability cases is that the
mere fact of the servant's having been injured, owing to
the existence of abnormally unsafe conditions, is not of
itself sufficient to overcome the presumption entertained
by the law, that the master has exercised proper care.
This doctrine is controlling, even in cases where the na-
ture of the accident is strongly suggestive of the con-
clusion that the master had fallen short of the obligatory
standard of care.  It has even been held that negligence
cannot be inferred where the instrumentality in question
failed to work properly on a few other occasions besides
that on which the injury was received. . . . The
limits of the rule are indicated by some exceptive forms
of statement.  Thus it is laid down that no presumption
of negligence on the part of the master arises, where it
does not appear that an appliance was originally defec-
tive, or that it has been so long in use as to render the
duty of inspection necessary, or that the master had due
notice of the defect." [Sec. 1600.]  "The principal qual-
ification to which the doctrine discussed in the preceding
section is subject is that which arises from the operation
of what is succinctly termed the doctrine of *res ipsa loqui-*

*tur.* The rationale of this doctrine is that, in 'some cases, the very nature of the action may, of itself, and through the presumption it carries, supply the requisite proof.' It is applicable 'where, under the circumstances shown, the accident presumably would not have happened if due care had been exercised.' Its essential import is that, on the facts proved, the plaintiff has made out a prima-facie case, without direct proof of negligence. . . . The doctrine does not dispense with the rule that the party who alleges negligence must prove it. It merely determines the mode of proving it, or what shall be prima-facie evidence of negligence. In quite a large body of cases, especially from the Federal courts, the language used admits of no other construction than that the court holds that the maxim never applies in a master and servant case." [Sec. 1601.] "The effect of the doctrines reviewed in the foregoing sections is that, except in that class of cases in which the doctrine of *res ipsa loquitur* is applicable, a servant is not entitled to have his case submitted to the jury, unless he introduces, in addition to the fact of the occurrence of the accident, some specific testimony which fairly tends to show that the employer was guilty of negligence. In the absence of such testimony, the case must obviously fall within the operation of the principle that an action is not maintainable where the plaintiff's evidence is equally consistent with the absence, or with the existence, of negligence. This rule, however, does not imply that it is only from direct evidence that the master's culpability can be inferred. The burden of proof is satisfied by the production of circumstantial evidence." [Sec. 1602.] "The establishment of a juridical connection between the master's negligence and the injury being one of the essential prerequisites to the maintenance of the action, the burden of proving that there was such a connection rests on the servant. The plaintiff must introduce testimony to show that the injury is more naturally to be attributed to the negligence of the defendant than to any other cause. There is no

case for submission to a jury, if there 'is an entire absence of evidence which would explain the manner in which the accident occurred, or if the evidence is as consistent with the absence of negligence for which the defendant is responsible as with the existence of such negligence.'' [Sec. 1603.] ''The doctrine stated in the last section involves the corollary that a servant cannot recover where it is merely a matter of conjecture, surmise, speculation, or supposition, whether the injury was or was not due to the negligence of the master or of an employee for whose acts and omissions he is responsible. From this rule it follows that the action cannot be maintained, if, after all the testimony has been put in, it remains doubtful whether the injury resulted from the cause suggested by the master, or from the cause suggested by the servant. As long as there is nothing more tangible to proceed upon than two or more conjectural theories, it is immaterial that the theory which is suggested in the interest of the servant is more probable than that which is suggested in the interest of the master.'' [Sec. 1604.]

To the foregoing rules we might well add a few additional rules, so well expressed by MARSHALL, J., in Goransson v. Manufacturing Co., 186 Mo. l. c. 306, 307: ''It is the duty of a master to furnish his servant a reasonably safe place and reasonably safe tools and appliances in which and with which to do his work. A failure to do so constitutes actionable negligence. [Citing cases.] The qualifications to this rule need not be here repeated, for they are not involved in this case. The master, however, is not an insurer of the safety of the place or tools and appliances. His duty is to exercise ordinary care, and his liability arises out of his negligence in not exercising such care. The servant, on the other hand, assumes the risks ordinarily and usually incident to the employment, and the wages he receives are in part compensation for assuming such risks. The qualifications to this general rule need not be repeated here. Necessarily, all business or employments are not equally hazardous, and the care

required of the master is measured, in a great degree, by the nature of the business and the liability of accident or injury resulting from it. It is, therefore, a rule of universal law that in suits of this character it is necessary for the plaintiff to allege and prove a causal connection between the injury and the negligence of the master. The corollary of this rule is that, if the accident might have resulted from more than one cause, for one of which the master is liable and for the other he is not liable, it is necessary for the plaintiff to prove, in the first instance, that the injury arose from the cause for which the master is liable, for it is not the province of a court or jury to speculate or guess from which cause the accident happened.''

As stated by Labatt on Master and Servant, supra, the courts of many jurisdictions, including the Supreme Court of the United States, apparently make the broad statement, without qualification, that the maxim *res ipsa loquitur* has no application to a master-and-servant case. While this court has not as yet gone so far as to broadly or dogmatically hold that the doctrine of *res-ipsa loquitur* never applies as between master and servant (Klebe v. Distilling Co., 207 Mo. 480; Removich v. Construction Co., 264 Mo. 43), nevertheless the doctrine has always been applied with great, if not extreme, caution and then only in certain isolated cases. As a fair example of the cases in which the doctrine has been applied by this court in master-and-servant cases, we might mention Blanton v. Dold, 109 Mo. 64; Scheurer v. Rubber Co., 227 Mo. 347; and Eckhardt v. Manufacturing Co., 235 S. W. 117. In each of those cases, however, the servant was injured by a piece of machinery, or other mechanical device, which failed to function or operate normally, or suddenly started to operate without being put into operation according to the usual and known mode provided for that purpose. To the cases last cited, there might be added Prapuolenis v. Construction Co., 279 Mo. 358, where a hanging platform or scaffold fell by reason of a supporting chain be-

coming unfastened. In each of the cited cases, and per-
haps others as well, the doctrine or rule *res ipsa loquitur*
was held to apply because the servant's injury was caused
by some appliance peculiarly within the knowledge and
control of the master and of which the servant was ignor-
ant and with which he had nothing to do. But, where the
servant or his associates have knowledge or opportunity
to know of the defect, the rule does not apply, but the
master's negligence must be proved, and, if not proved,
plaintiff fails to make a case. [Klebe v. Distilling Co.,
207 Mo. 480, in which case a loaded elevator fell because
of the unexplained breaking of the rope by which it was
suspended.] Again, in Removich v. Construction Co.,
264 Mo. 43, the servant was injured by the breaking of
the steel cable from which a large bucket was suspended,
causing the bucket to fall upon the servant. Plaintiff in
that case sought to charge negligence in his petition in
general terms as applied to the facts and thereby bring
himself within the rule *res ipsa loquitur*. A demurrer
to the petition was sustained. Said this court in that case
(l. c. 57): "The petition of plaintiff here under discus-
sion did not attempt to set out any reason for the break-
ing of the steel cable. It broke, and the bucket fell, and
plaintiff was hit and hurt. That is all. It may have brok-
en from having been concededly overloaded by plaintiff,
or by his fellow-servant; it may have broken from a lat-
ent undiscoverable defect; it may have broken because of
a sudden jerking, or unnecessarily hard movement, of
the hoisting engine; it may have suddenly become defec-
tive too recently to thrust on defendant the legal duty
of discovery; any of these things, or even others, may
have operated to produce plaintiff's injury. Therefore, it
was, we think, the duty of plaintiff to state such affirma-
tive facts, touching the manner of the happening of the
casualty, as to negative by fair inference the theory that
it occurred by reason of some efficient defensive cause pre
cluding as a matter of law the liability of defendant."

Reference to plaintiff's petition herein discloses that
the gravamen of the charge of negligence therein stated

(whether it be termed a general or specific allegation of negligence) is that "the place where plaintiff was working was not reasonably safe for said work plaintiff was as aforesaid engaged in by reason of said pile of material being *insecure* so that there was *probable danger* of it falling on and injuring plaintiff, and defendant knew or by the exercise of ordinary care would have known that said pile was as aforesaid *insecure* and there was *probable danger* of it falling on and injuring plaintiff . . . in time to have by the exercise of ordinary care remedied said condition before plaintiff was injured, but it negligently failed to do so, and . . . defendant negligently required plaintiff to work and be at and about said pile, all without protection or notice of any kind to him." The word "insecure" is defined as meaning "unsafe" and therefore "dangerous." [Century and Webster's Dictionaries.] A petition containing like or similar allegations was considered by Division Two of this court in Zasemowich v. Manufacturing Co., 213 S. W. 799. There, the petition charged the duty of defendant to furnish plaintiff with a reasonably safe place to work and reasonably safe appliances with which to work and that certain horizontal iron rollers in which plaintiff was injured "were so placed as were dangerous to persons employed in said manufacturing and mechanical establishment." Said that division of this court (l. c. 802): "The petition neither alleges, nor does the evidence prove, that defendant failed to furnish plaintiff a reasonably safe place to work. He had been performing the same duty, in the same manner, with the same machinery, six or seven times a day, for four or five months, without complaint or accident. Defendant's evidence to the effect that the machine was in good condition is uncontradicted. The general averment that said iron rollers were dangerous to persons employed in said establishment is insufficient to charge negligent construction or maintenance. It amounts simply to the statement of a legal conclusion, and tenders no issue of fact. [Citing authorities.] The aver-

ment that the rollers were so placed as to become danger-
ous to employees working in the plant is not tantamount
to an allegation that the machinery was negligently con-
structed, nor that it was improperly maintained.''

But, regardless of the question whether or not plain-
tiff's petition herein states a cause of action upon which
a valid judgment may be predicated, nevertheless, we
believe that plaintiff has failed to prove any actionable
negligence on the part of defendant, or that such action-
able negligence was the proximate cause of his injuries.
The evidence in no sense tends to prove that the pile of
staves which fell upon plaintiff was constructed or main-
tained in a negligent manner. Plaintiff testified that
the pile of staves which fell had been standing for two
days, perhaps longer; that the pile was constructed in the
usual and customary manner, by first laying a row of
bundles in one direction and the next row on top of them
in the opposite direction, and so on to the top of the pile,
and that that was the way defendant piled the staves all
over the shed; that the first thing he knew about any dan-
ger was when he turned and saw the pile ''caving;'' that
that was the first thing that looked unusual or dangerous;
and that all the morning he was working there, he ''didn't
see anything that was different from what it usually
was.'' Plaintiff had been employed at the same work
by defendant for eighteen years, most of the time culling
staves, but ''once in a while'' during the eighteen years
he had helped pile staves as high as the pile which fell.
The pile was about twenty-two feet in height, but we in-
fer from plaintiff's own testimony that this was not an
unusual height and, in fact, plaintiff in his petition does
not charge negligence in that the pile of staves was too
high or likely to fall by reason of its height. True, plain-
tiff testified, over defendant's objections, that he under-
stood the work of piling staves; that ''if you pile it
straight and solid, it won't fall; or, if you put something
on the side like a piece of rock or piece of wood, it don't
fall right away, but some days afterwards it fall down;

if they don't pile them right they fall;'' that when the wires binding the bundles break, ''the staves make it loose; make it separate; up near the top of the pile, when the wires break, the staves would separate and some would fall off the pile. But if they are between the bundles they can't fall off; make it a little crooked; make the pile lean; you can't see it, but afterwards they fall down. Sometimes it would take it slow; take it, maybe, whole half a day, and *nobody can tell when they bust, from the front.*'' He also testified that the pile which fell was not leaning in anyway; there was nothing touching the pile; he did not hear ''any wire break or pop;'' that the ground on which the pile rested was level, and that the men who had built the pile had done the same kind of work ''always, for several years.'' Regardless of whether plaintiff's testimony in this respect was competent or properly admissible, upon which question we do not find it necessary to rule, at the most it is highly speculative and conjectural and fails to establish that defendant was negligent in either the construction or the maintenance of the pile.

In Bowman v. American Car and Foundry Co., 226 Mo. 53, plaintiff was injured by the fall of a pile of pig iron upon him. In that case we said: ''There was no evidence of negligence on the part of the defendants to justify the submission of the case to the jury . . . . There was no evidence that the pile that fell was negligently constructed or that it contained a defect that was known or could have been known by the exercise of ordinary care. The pile had stood in place for several months; if it had been cord wood, possibly the length of time might have suggested that some of the pieces had become rotten, but this was pig iron. The petition charges that it 'had been so piled and placed as that it was liable to fall over at any time,' but it does not specify in what particular it was defective. Under the averment (assuming without conceding that it was sufficient to state an act of negligence) the plaintiff could have introduced evidence to

Sabol v. Cooperage Company.

prove any defect in the construction or location of the pile that would indicate its dangerous condition, as that it was leaning to one side, or was not compact or otherwise, but the only thing he attempted to prove was that it was higher than usual. He offered no evidence to show that the height rendered it dangerous. Men of experience in that business could have been found to testify that the height of seven or eight feet rendered the pile dangerous, if such was the fact, but neither the court nor the jury could take judicial cognizance that such was the fact. Yet with no evidence except that the pile was seven or eight feet high the jury was left to conjecture that from that fact alone it was dangerous. Jurors may sometimes draw on knowledge that comes from the common experience of mankind to assist them in reaching a conclusion, but that is knowledge that men in general have, not a few in particular. If it is knowledge that comes by the experience of a class in a particular business it must be proven by evidence. There was no such evidence in the case; the only evidence that could be considered as bearing on the question was that of the plaintiff himself and his companion in labor and they both testified that viewing the pile and having seen it for months, they saw nothing to indicate danger—how then could the jury say that it was dangerous?''     •

In David v. Cider Co., 186 Mo. App. 13, plaintiff was injured by a barrel falling from a pile of barrels upon him. Plaintiff's evidence was to the effect that ''the barrels were piled too shaky—that is how it happened.'' Said the St. Louis Court of Appeals in that case: ''As to the alleged negligent piling of the barrels, nothing whatsoever appears as to the manner in which the barrels were stacked in the tier from the top of which the barrel in question fell. Nor is there any evidence whatsoever as to the condition of this tier or stack prior to the falling of the barrel therefrom. True, there is plaintiff's general statement as to the happening of the accident, viz.: 'The barrels was piled too shaky; that is how it hap-

313 Mo. Sup.—35.

pened.' But this is clearly a mere conclusion on his part, and without probative force; for he repeatedly declared that he did not observe this stack of barrels at all prior to the accident, and paid no attention whatsoever to its condition or how the barrels were stacked therein." It was also ruled in that case that, upon the authority of Klebe v. Distilling Co., 207 Mo. 480, the maxim *res ipsa loquitur* does not apply.

The same principle is ruled in Sutherland v. Lumber Co., 149 Mo. App. 338, where the servant was killed by a toppling pile of lumber; Pruett v. Lumber Co., 188 Mo. App. 347, where plaintiff was injured by a log rolling upon him from a pile of logs loaded upon a flat car and it was ruled that "it devolves upon plaintiff to show more than the mere fact that the log rolled from the car and injured him, before the defendant may be held accountable as for having failed to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work"; Dickinson v. Jenkins, 144 Mo. App. 132, where the servant was injured by the fall of a timber from a pile next to where he was working; and Bradley v. Tea & Coffee Co., 213 Mo. 320, where the servant was killed by the falling of a pile of heavily loaded coffee sacks.

Nor do we think the maxim *res ipsa loquitur* applies to plaintiff's situation in this case. The maxim had its origin in the law of necessity and is bottomed upon the condition that the instrumentalities used are *peculiarly* within the knowledge and under the *control* of the master, and upon the further reason that the person injured has no opportunity to investigate the cause of the accident or to ascertain the names and addresses of those who do know the facts which cause the injury, thereby rendering it well-nigh impossible for the injured party to establish the cause of injury. [Klebe v. Distilling Co., 207 Mo. 480.] In that case, however, where the servant was injured by the breaking of an elevator cable, we said (l. c. 492): "If the elevator or the cable was defective or out of repair, there was nothing to prevent plaintiff and his

co-employees from seeing them; nor does this record show
that there was any reason why those persons employed in
and about the building could not or did not examine the
break after it occurred, or that their names and places of
abode were unknown to him, which prevented him from
procuring them to testify in the case. In the absence of
any showing, it is reasonable to suppose he could have
ascertained from his colaborers all the facts and circum-
stances connected with the accident, and doubtless could
have placed them upon the witness stand and proved by
them the exact cause of the accident, which is always
more satisfactory and just to all parties than a mere pre-
sumption. It is thus seen that all of the facts of the case
were susceptible of direct proof by persons who possessed
personal knowledge of the entire situation, and the cause
of the accident and injury. Measured by this state of
facts, the plaintiff has fallen far short of showing that the
cause of the injury was peculiarly within the knowledge
of the master, or that he was in the exclusive charge or
control of the elevator at the time of the injury. Such a
state of facts as disclosed by this record never gave rise
for the *necessity* of the application of the rule of *res ipsa
loquitur*. Where the reason and the necessity for the ap-
plication of the rule are lacking, it should never be re-
sorted to or applied. All the authorities where the ques-
tion has been presented, so far as we have been able to
find, which hold that the rule applies to master and serv-
ant, invariably limit its application to that class of cases
which is not susceptible of direct and positive proof by
living witnesses, and that doctrine is resorted to as a last
resort in order to prevent a miscarriage of justice.''

So, in the instant case, the record shows that plain-
tiff had been employed by defendant for eighteen years
and had himself at times helped in the construction of
similar piles of staves. It is natural and reasonable to
infer, we think, that he must have known, or might have
obtained, the names and addresses of his fellow employees
who had constructed the pile in question. He testifies

that he was "only about thirty feet from" the men engaged in the construction of the pile and that he saw the men working on the pile "when I was pass by." Yet not one of these men was called by plaintiff as a witness to testify how the pile was constructed or whether it was constructed in the usual manner theretofore employed. Certainly some of these fellow-employees were close by when the pile fell and plaintiff was injured, yet not one was called to give evidence as to the cause, or probable cause, of the pile falling. Such being the state of the record, the reason of *necessity* for the application of the maxim *res ipsa loquitur* fails in this case.

While, in passing upon a demurrer to the evidence, the evidence must be viewed by us in the light most favorable to plaintiff, giving him the benefit of every reasonable inference in his favor which may be fairly and legitimately drawn therefrom, nevertheless such evidence must tend, directly or inferentially, to *establish* negligence on the part of defendant and the jury must not be left groping in the realm of speculation and conjecture in arriving at a verdict. [Bennett v. Equipment Co., 214 S. W. 244; O'Dell v. Lead Co., 253 S. W. 397.; Weber v. Milling Co., 242 S. W. 985; Goransson v. Manufacturing Co., 186 Mo. 300.] We are constrained to hold herein, following the unquestionable weight of authority as announced in the cases cited, that the trial court erred in not sustaining defendant's demurrer to the evidence, provided the demurrer was not waived by defendant, to which question we now address ourselves.

II.   Respondent urges that appellant has waived its demurrer to the evidence by asking an instruction, given by the trial court, allowing the jury to find from the evidence that the defendant exercised ordinary care in the erection and maintenance of the pile of staves from which certain bundles of staves fell upon plaintiff, thereby inviting the jury to pass upon the issue whether defendant exercised ordinary care in the erection and maintenance of the pile which fell.

Waiver of Demurrer.

In support of this contention, appellant cites Davison
v. Hines, 246 S. W. 295, an opinion adopted by this divi-
sion of this court. We deem that case distinguishable
from the one at bar. There, plaintiff assigned, and of-
fered evidence upon, several issues of negligence, and
the demurrer to the evidence was leveled at all the issues
assigned and thereafter submitted and, the demurrer
being overruled, defendants thereupon requested two in-
structions, given by the trial court, limiting and control-
ling all of the several issues assigned and submitted. This
is made clear by the language of the opinion, wherein it
is said: "By requesting Instructions I and J and causing
them to be given to the jury by the court, they (defend-
ants) estopped themselves from denying that the evidence
was sufficient to go to the jury upon *each of the questions
so submitted.*" Here, there is but one assignment of neg-
ligence (if the petition may be said to assign negligence
at all), viz., the erection and maintenance of the pile of
staves when defendant knew, or could have known by ex-
ercise of ordinary care, that said pile was insecure and
there was probable danger of its falling. While plaintiff
asked no instruction upon his theory of the case, yet the
court *nisi* submitted the case to the jury necessarily upon
the allegation or single charge of negligence in the peti-
tion and defendant asked an instruction to meet that
theory, as it was necessarily forced to do when the trial
court denied its demurrer to the evidence. In Everhart
v. Bryson, 244 Mo. l. c. 516, we said, in Banc: "It is
settled by numerous decisions of this court that a *defend-
ant* does not waive his objection to the refusal of the court
to give his peremptory instruction in the nature of a de-
murrer to the evidence by asking further instructions to
meet those given on behalf of the plaintiff."

Likewise, in Kenefick-Hammond Co. v. Fire Insur-
ance Society, 205 Mo. l. c. 307, the entire question was re-
viewed and the authorities bearing thereon fully analyzed,
wherein this division of this court, speaking through
LAMM, J., said: "The proposition in the third paragraph

[of an opinion of the St. Louis Court of Appeals under review] is to the effect that where a defendant challenges plaintiff's theory of the sufficiency of all the evidence to make a case for plaintiff by submitting an instruction in the nature of a demurrer to the evidence at the close of the case, such defendant does not estop himself or waive his right on appeal to pursue his exception to the court's ruling on such demurrer by asking and receiving instructions the converse of those given for plaintiff. Is that proposition good law? Eminently so, because: In construing rules of appellate practice in accordance with right reason, regard must be had to the difference between the position occupied by a defendant and that occupied by a plaintiff. The plaintiff goes into court voluntarily; the defendant is *'lugged'* in, that is, pulled in by the lugs, *will ye, nill ye.* The plaintiff goes up to battle on his own ground—he pitches the field. The defendant by a plea in avoidance may undertake to flank plaintiff's position and select another battlefield. The trial court may parry the flanking operation and force defendant to join battle on the position taken by plaintiff. Having been thus coerced and having yielded, as he was in duty bound to yield (and because he could not help himself) how can it be said that, because he made the very best of a bad bargain and tried 'to pluck the flower, safety, from the nettle, danger,' he lost his right to complain of the court's ruling in coercing him?'' To like effect is Cochran v. Railway Co., 113 Mo. 359.

In the quite recent case of Armstrong v. Scullin Steel Co., 268 S. W. 386, the St. Louis Court of Appeals has reviewed the authorities bearing upon the question and has rightly, we think, distinguished our ruling in Davison v. Hines, supra. Said that court upon the point involved: ''But counsel for respondent argues that since defendant offered, and the court gave, instructions on the issues made, that then defendant has abandoned his demurrers, and defendant implies that all those elements are in issue upon the evidence, and relies upon Davison v. Hines,

246 S. W. 295, 303. While the opinion in the Davison case employs language somewhat broader than that used in Torrance v. Pryor, 210 S. W. 430, and Leahy v. Winkel, 251 S. W. 483, and similar cases, yet that decision is no broader than in these cases. We have recently attempted to analyze these latter cases in Loretta McMahon v. Joseph Grennspon's Sons Iron and Steel Co., 267 S. W. 83 (not yet officially reported). It is our understanding that the rule is that where several assignments of negligence are contained in the petition and a general demurrer to the evidence is interposed, with no request that any particular assignment be withdrawn from the jury, that then if defendant joins in submitting the case on instructions on any particular theory or cause of action, he is precluded from saying that such doctrine is not in the case. But where there is but one assignment of negligence, as here, the demurrer to the evidence is not abandoned by defendant in offering instructions on such theory.''

We hold, in view of the fact that there is but one assignment of negligence (if any) in the instant case, that respondent did not waive or abandon its demurrer to the evidence by asking an instruction to meet plaintiff's theory. From what we have here said, it follows that the judgment *nisi* must be reversed outright, and it is so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is hereby adopted as the opinion of the court. *Ragland, P. J., Graves* and *Atwood, JJ.,* concur; *Woodson, J.,* absent.